Richard Andrew LAMPHERE,
Appellant,

v.

STATE of Iowa, Appellee.

No. 83–62.

Supreme Court of Iowa.

April 11, 1984.

Kermit L. Dunahoo, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Joseph P. Weeg, Asst. Atty. Gen., and Dan L. Johnston, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

Applicant Richard Lamphere appeals from a district court ruling denying him postconviction relief. We affirm and remand with direction.

The transcripts of the trial and related hearings leading to the underlying convictions of first-degree kidnapping and second-degree sexual abuse are in evidence here. The jury could have found that applicant accosted the victim outside Peggy's tavern in Des Moines and forced her into his car at gunpoint. After handcuffing her, applicant drove to a city park where he subjected her to various acts of sexual abuse. The victim, fearful that he would kill her, convinced applicant she would spend the night with him. Applicant drove to a motel, and when he ran inside to register, the victim drove off in the car. Unfamiliar with the city, she finally stopped at an Ankeny service station, where the attendants called the Ankeny

police. They in turn called their Des Moines counterparts. The jury also could have found that after applicant was stranded at the motel, he found transportation back to Peggy's tavern and reported his car had been stolen from that location.

The victim's testimony was supported by her injuries, by the testimony of another witness who saw applicant loading a gun in the tavern parking lot, and by an expert witness who identified applicant's writing on the motel registration card.

Applicant claimed to have been visiting an unidentified friend during most of the critical time, and then to have stopped at Peggy's tavern for a six pack of beer. According to applicant, his car was missing when he emerged from Peggy's. Following a brief search, he called the police to report it stolen. The officers took him to the police station to make out a stolen vehicle report. Later that night they charged him with sexual abuse.

The jury convicted applicant of first-degree kidnapping, a violation of Iowa Code section 710.2, and of second-degree sexual abuse, a violation of Iowa Code section 709.3(1). At sentencing on February 2, 1979, applicant indicated a desire to appeal. He did not retain his trial lawyer for this purpose, although he testified at the postconviction hearing that trial counsel had given his defense "the best shot he could." Instead, he hired a Des Moines attorney, William H. Cone, Jr. Applicant's family paid attorney Cone about $5,000 initially, and several smaller amounts later.

Although Cone assisted applicant's trial counsel in post-trial motions, he did not file an appendix or brief in this court. October 11, 1979, our clerk sent him a default notice, to which no response was filed. November 20, 1979, applicant's appeal was dismissed pursuant to rule 19, Iowa Rules of Appellate Procedure. Cone made no motion to reinstate the appeal. The postconviction evidence convinces us he did not inform applicant of these events until almost a year later, when he sent a handwritten letter that applicant received November 18, 1980. In that communication Cone informed applicant he had no grounds for direct appeal; his only recourse was through a postconviction proceeding.

Applicant, who thought at all times that an appeal was in progress and that he had grounds for appeal, wrote to the trial judge on December 3, 1980. The appellate defender's office was appointed to represent applicant. This court overruled a motion to reinstate the appeal. Applicant's present counsel was then appointed to represent him in postconviction proceedings. Following a hearing, the district court denied postconviction relief.

In this case applicant has raised the following issues: (1) ineffective assistance of appellate counsel, (2) ineffective assistance of trial counsel, (3) error in admission of evidence seized in a search, and (4) unconstitutional cruel and unusual punishment in imposing a life sentence.

■ Because all of these issues are constitutional in dimension, our review is de novo. See, e.g., State v. Newman, 326 N.W.2d 788, 793 (Iowa 1982); State v. Harlan, 301 N.W.2d 717, 718 (Iowa 1981).

### I. Ineffective Assistance of Appellate Counsel.

■ The State argues applicant is barred from raising several of the issues presented in this appeal because he cannot demonstrate "sufficient reason" under Iowa Code section 663A.8 for failing to raise them on a direct appeal, citing Bledsoe v. State, 257 N.W.2d 32, 33–34 (Iowa 1977). Of course, ineffectiveness of counsel provides a "sufficient reason" for the purposes of section 663A.8. See State v. Schoelerman, 315 N.W.2d 67, 71–73 (Iowa 1982).

Attorney Cone, who filed the notice of appeal following applicant's convictions, elected to permit the appeal to be dismissed and did not notify the applicant. His letter written to applicant the following year discloses the funds he had received for fees and expenses of appeal had been paid by applicant's mother and that applicant was without funds.

■ We need not decide here whether the requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and rule 104, Iowa Rules of Appellate Procedure apply. It is clear that Cone's duties as a lawyer and officer of this court required him to notify his client of his decision to abandon the appeal in time for his client to find some other method of protecting his rights. Disciplinary rule 2–110(A)(2), Iowa Code of Professional Responsibility for Lawyers, forbids an attorney to withdraw from employment "until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, [and] delivering to the client all papers and property to which the client is entitled." Attorney Cone's decision to allow dismissal of applicant's appeal was tantamount to a withdrawal and invoked the above rule, which he did not follow. *Cf. Committee on Professional Ethics and Conduct v. Freed*, 341 N.W.2d 757 (Iowa 1983) (attorney disciplined for failure to prosecute client's civil appeal).

■ Although it is charitable to characterize attorney Cone's assistance as ineffective, we can and will avoid prejudice to applicant by avoiding the bar of Iowa Code section 663A.8 and considering the issues now raised under the rationale of *Fryer v. State*, 325 N.W.2d 400, 404 (Iowa 1982); and *Stanford v. Iowa State Reformatory*, 279 N.W.2d 28, 33–34 (Iowa 1979). Thus we proceed to the next issue.

## II. *Ineffective Assistance of Trial Counsel.*

Applicant now asserts his trial counsel was ineffective in implementing applicant's alibi defense, in failing to object to certain jury instructions, and in failing to raise double jeopardy objections.

■ The burden of proof to establish ineffectiveness is on applicant, who must rebut the presumption of counsel's competence. "[T]he ultimate test is whether ... counsel's performance was within the range of normal competency." (Citations omitted.) *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981). Relief will be granted only if applicant has been prejudiced by counsel's substandard performance. *Id.* We will not hold applicant has been prejudiced unless the error constitutes "a denial of the accused's due process right to a fair trial, a fundamental miscarriage of justice, or an equivalent constitutional deprivation." *State v. Miles*, 344 N.W.2d 231, 234 (Iowa 1984).

### A. *Alibi Defense.*

■ Applicant's trial counsel filed a pretrial notice of an alibi defense. See Iowa R.Crim.P. 10(11)(a). In compliance with the rule, the notice listed William Talbert as a person in whose home applicant spent "some of such material times," and the names of two bartenders from Peggy's. Applicant now asserts trial counsel provided ineffective assistance by not presenting the two bartenders as "alibi-buttressing" witnesses, and by not requesting an alibi instruction.

Upon his direct examination, applicant testified he spent part of the critical time ("closer to an hour" than to five minutes) at the home of a friend. On cross-examination, he testified this person was not William Talbert, but refused to provide the name because the person "deals in marijuana" and "I am not going to jeopardize his life." Applicant nonetheless contends the two bartenders should have been called to testify. Trial counsel testified at the postconviction hearing, however, that one bartender could only place applicant at Peggy's sometime between 11:30 p.m. and 1 a.m., and the other indicated only that applicant might have arrived about 12:30 a.m.

This evidence would not have rebutted the victim's testimony that she was abducted by applicant at 11 p.m. *See Thomas v. Estelle*, 588 F.2d 170, 171 (5th Cir.1979), in which counsel's failure to call alibi witnesses was not adjudged ineffective assistance: "Their testimony, however, would not have aided defendant at trial, since they do not account for his activities during the time of

the alleged assault." Trial counsel's decision not to call these bartenders cannot be characterized as ineffective assistance of counsel.

 Applicant asserts counsel's failure to request the alibi instruction [1] is further evidence of his ineffective assistance. Trial counsel testified at the postconviction hearing that he knew there was a standard alibi instruction, but elected not to ask for it because he did not think it was necessary; the State had to prove applicant was present at the critical time and place. Counsel's rationale, drawn from all of his testimony, is articulated more clearly in an annotation, 72 A.L.R.3d 547, 557 (1976):

> Several courts have suggested that in certain circumstances, an alibi charge might be undesirable since it would tend to concentrate attention upon this defense and divert consideration from unrelated weaknesses in the state's case, and in fact, might tend to obscure the role of alibi by suggesting that the defendant, rather than the state, has the burden of proof in this regard.

It is true, of course, that the State's duty to prove the defendant was present inheres in the regular elements of the offense. *State v. Sallis,* 238 N.W.2d 799, 801 (Iowa 1976).

 In *State v. Blackford,* 335 N.W.2d 173, 178 (Iowa 1983), this court found itself "convinced that not every right to insist that a particular instruction be given need be availed of by counsel in order to satisfy the standard of normal competency." We hold the same reasoning applies here, and counsel's failure to request an alibi instruction, or object to the instructions given as not containing one, is not an indicia of ineffective assistance of counsel.

 Applicant argues the court's failure to provide an alibi instruction sua sponte deprived him of due process. We have held the court, in the absence of a request, does not abuse its discretion in

failing to so instruct, *State v. Lightfoot,* 107 Iowa 344, 351, 78 N.W. 41, 43 (1899), a position supported by most jurisdictions. *See* annot., 72 A.L.R.3d at 558–62. We find no merit in applicant's contention.

B. *Failure to Object to Instructions.*

Applicant argues the postconviction court should have found he was denied effective assistance of counsel because his trial attorney failed to object to instructions defining first-degree kidnapping and second-degree sexual abuse on the ground they omitted "the essential element of general intent in the crime of sexual abuse." We note that the marshaling instruction laying out the elements of second-degree sexual abuse followed Uniform Jury Instruction 906 in omitting reference to a general intent to do the act.

 Second-degree sexual abuse, as defined by Iowa Code section 709.3(1), is not a specific intent crime like that we analyzed in *State v. Goff,* 342 N.W.2d 830, 837–38 (Iowa 1983). It is a general intent crime of the type we considered in *Eggman v. Scurr,* 311 N.W.2d 77, 79–81 (Iowa 1981); and *State v. McCormack,* 293 N.W.2d 209, 212 (Iowa 1980). Although we believe this instruction to be erroneous, we do not consider it determinative in the circumstances of this case. The instruction did require the jury to find that applicant performed a sex act with the victim, that the act was performed by force or against her will, and that during commission of the act the applicant "displayed, in a threatening manner, a deadly weapon or used or threatened to use force, which created a substantial risk of death or serious injury" to the victim. As we observed in *Blackford,* 335 N.W.2d at 178, "It is quite unlikely that a jury would find that an accused who forced a victim to engage in a sex act would not have acted knowingly and intentionally in perpetrating such an act."

---

1. Uniform Jury Instruction 211 provides:
 If after consideration of all the evidence you have a reasonable doubt as to whether the accused was present at the time and place the alleged offense was committed, you should acquit the defendant.

Further, in another instruction the jury was advised that first-degree kidnapping occurs "when, as a consequence of the kidnapping, the person is intentionally subjected to sexual abuse." One of the elements of first-degree kidnapping incorporated in the marshaling instruction on that offense required the jury to find, "[t]hat as a result of the removal or confinement [the victim] was intentionally subjected to sexual abuse."

■ There was substantial evidence of the trauma the victim sustained in this incident. There was no issue raised that the act was not performed by force or against her will, nor was there any issue of intent. *See Miles*, 344 N.W.2d at 235 ("Because intent was not a fighting issue in the [*Blackford*] case, the court concluded the instructional error was of little significance to the defense."). We hold counsel's failure to object to the omission of the general intent element did not prejudice the applicant under the *Miles* standards. This conclusion is reinforced by our holding in the next subdivision that the conviction for second-degree sexual abuse should be set aside.

■ Applicant argues we should reverse both convictions on the appellate review standard of "plain error." We rejected this standard in *State v. Johnson*, 272 N.W.2d 480, 484 (Iowa 1978), and are not persuaded to adopt it now, as we confirmed recently in *Miles*, 344 N.W.2d at 233 ("We do not have a plain error rule.").

C. *Failure to Lodge Double Jeopardy Objections.*

■ Several years after applicant's criminal trial, we held under similar facts and charges that the second-degree sexual abuse was a lesser included offense of kidnapping in the first degree. We therefore reversed the sexual abuse conviction under the mandate of Iowa Code section 701.9 ("No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted."). *State v. Whitfield*, 315 N.W.2d 753, 755 (Iowa 1982). In two later cases we indicated that if the State charged and proved separate and distinct sexual abuse incidents to support the greater charge and the lesser charge, separate convictions might lie. Nonetheless, we followed *Whitfield* because in both cases the prosecution was treated by all concerned as a single episode. *State v. Newman*, 326 N.W.2d at 793; *State v. Folck*, 325 N.W.2d 368, 375–76 (Iowa 1982).

This case falls squarely within the *Whitfield* holding and the section 701.9 prohibition. The sentence was in violation of state law. *See* Iowa Code § 663A.2(1). We now correct it by nullifying the judgment and sentence for second-degree sexual abuse. *See State v. Davis*, 328 N.W.2d 301, 308 (Iowa 1982). To this extent the postconviction judgment is modified and the case is remanded to district court for appropriate implementing orders.

III. *Error in Admission of Evidence.*

Applicant argues the postconviction court erred in holding he was not denied effective assistance of appellate counsel in his criminal case when the latter failed to pursue certain fourth amendment issues preserved by trial counsel. We avoid any prejudice to applicant by proceeding directly to consideration of these issues for the reasons set out in division I.

The criminal trial record discloses the victim arrived at the Ankeny service station in applicant's car shortly before the Des Moines police were notified of the sexual abuse complaint and dispatched to that point. At about the same time applicant was in the vicinity of Peggy's, reporting to police his car was stolen, and it contained a Thompson semi-automatic machine gun and a .410 gauge shotgun pistol, together with ammunition for both. The information about the guns was broadcast on police radio. Applicant told the police he was worried that someone might get shot. About fifteen minutes later, while still sitting in the police car, he heard the Ankeny police report the car had been "spotted."

When Des Moines policeman Howell arrived in Ankeny, the victim told him of her abduction, rape, and escape in the car, and pointed out the vehicle. When Howell approached the car he saw a .410 shotgun pistol, two shells and a pair of handcuffs lying on the back seat. He unloaded the pistol, and kept it and the shells, leaving the handcuffs. After the car had been impounded in Des Moines, officer Jones searched the car because "[i]t was part of the crime scene" and because applicant "was adamant about there being a machine gun in that vehicle, and I wanted to insure or at least know that there was one or not one." He admitted he was not making an inventory search. He seized for evidence the handcuffs and some shells for the pistol. The pistol, shells, and handcuffs were received in evidence, over trial counsel's fourth amendment objections. Trial court admitted the pistol under the "plain view" doctrine, see State v. Harlan, 301 N.W.2d at 720, and the handcuffs and shells on the basis of the inventory exception, see South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

Applicant, with respect to the Ankeny search and seizure, argues the "plain view" doctrine cannot apply because the discovery was not inadvertent: It was planned because Howell had been told by the victim that the pistol and handcuffs were in the car. Applicant asserts the Jones search and seizure of the handcuffs and shells was not an "impoundment" search and that a proper warrant should have been obtained.

■ Preliminarily, we note trial court's rulings will be sustained if other justifications exist for admitting the disputed evidence. See Harlan, 301 N.W.2d at 720 ("We will uphold the conclusion of the trial court, even if we do not adopt its reasoning.").

■ Although we view the first search and seizure as justified on several grounds, it is easily supported by the exigency of the situation. The car was located in a public place, exposed to public entry, with the pistol plainly visible. The police had been informed there were weapons and ammunition inside. The kidnapper had not been identified and presumably was at large. In these circumstances we hold officer Howell was justified in removing the pistol, unloading it, and preserving it for evidence. Ample support for this conclusion is found in Robbins v. California, 453 U.S. 420, 423–24, 101 S.Ct. 2841, 2844–45, 69 L.Ed.2d 744, 748–49 (1981); Cady v. Dombrowski, 413 U.S. 433, 439–43, 93 S.Ct. 2523, 2527–29, 37 L.Ed.2d 706, 713–16 (1973); Chambers v. Moroney, 399 U.S. 42, 48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419, 426–27 (1970); State v. Cullor, 315 N.W.2d 808, 811 (Iowa 1982); State v. Holderness, 301 N.W.2d 733, 736–37 (Iowa 1981); and State v. Dixon, 241 N.W.2d 21, 24 (Iowa 1976).

■ The seizure of the items found in the second search, after the car was impounded, was no less justified. Applicant was insisting he also carried a Thompson submachine gun in the vehicle, and it had not been located. The search was valid because exigent circumstances existed when the police initially located the vehicle, and the probable cause continued to exist. Holderness, 301 N.W.2d at 737; see United States v. Ross, 456 U.S. 798, 807, n. 9, 102 S.Ct. 2157, 2163, 72 L.Ed.2d 572, 582–83 (1982); Texas v. White, 423 U.S. 67, 68–69, 96 S.Ct. 304, 305, 46 L.Ed.2d 209, 211–12 (1975); Cady, 413 U.S. at 447, 93 S.Ct. at 2531, 37 L.Ed.2d at 718; Chambers, 399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 428–29; Cullor, 315 N.W.2d at 810–11; State v. Olsen, 293 N.W.2d 216, 218–19 (Iowa), cert. denied, 449 U.S. 993, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980).

Finally, we note in passing any prejudicial impact of the contested evidence was minimized by the evidence of applicant's reports to the police concerning the guns and ammunition he had in the car, and by his trial testimony that he owned the pistol, ammunition and handcuffs. See Whitfield, 315 N.W.2d at 755 ("[A]n accused who testifies and admits certain facts is deemed not prejudiced by the erroneous admission of other evidence of those same facts.").

## IV. *Life Sentence as Cruel and Unusual Punishment.*

Applicant asserts the combination of Iowa statutes that resulted in his life sentence offended the disproportionality branch of the prevailing eighth amendment standard on cruel and unusual punishment. *See* Iowa Code §§ 710.1, 710.2, 902.1. The sentence, he argues, is so excessively severe that it is disproportionate to the offense charged. *See Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *State v. Robbins,* 257 N.W.2d 63, 68 (Iowa 1977). This is because a life sentence may be given in this situation even though no death or serious injury occurs.

This issue was raised in trial court in a post-trial motion. We consider it despite the failure to appeal the sentence, for the reasons assigned in division I.

We have analyzed the crime and punishment under the three-factor test laid out in *Solem v. Helm,* — U.S. —, —, 103 S.Ct. 3001, 3010, 77 L.Ed.2d 637, 649–50 (1983): Gravity of the offense and harshness of the penalty; sentences imposed on other crimes in this jurisdiction; and the sentence imposed for kidnapping in other jurisdictions.

Iowa is not alone in considering kidnapping a serious crime. *See In re Maston,* 33 Cal.App.3d 559, 563, 109 Cal.Rptr. 164, 167 (1973) ("[K]idnapping is one of the most serious of all crimes. By its very nature it involves violence or forcible restraint.") (citations omitted); *Vacendak v. State,* 264 Ind. 101, 105, 340 N.E.2d 352, 355, *cert. denied,* 429 U.S. 851, 97 S.Ct. 141, 50 L.Ed.2d 125 (1976) ("The severity of punishment ... can be explained by the degree to which the legislature has deplored this [kidnapping] crime.").

When a prospective rape victim is kidnapped, the potential for additional harm justifies the increase in defendant's punishment:

> The asportation frequently is accomplished by the use of force, making it possible for death or bodily injury to result. Taking a victim from familiar surroundings to an unknown location can cause psychological damage, or the movement may aggravate the victim's freedom-seeking impulses, causing the victim to attempt an escape and thus possibly incur more serious bodily harm. Second, the harm of detention can justify increased penalties. Once the victim is isolated from the public, the defendant is free to deal with the victim at will and is more likely to be in a position to engage in an extended assault upon the victim. Additionally, isolation from the public increases the victim's risk of being cut off from medical aid.

Note, *Kidnapping in Iowa,* 67 Iowa L.Rev. 773, 782–83 (1982). *See also State v. Knupp,* 310 N.W.2d 179, 182 (Iowa 1981). Thus, although the punishment for first-degree kidnapping is severe, the crime, too, is one of utmost severity.

In Iowa first-degree murder and first-degree sexual abuse are the only other crimes punishable by life imprisonment. Although the harm to the victim in a first-degree murder case clearly outweighs the harm to the victim here, first-degree murder in Iowa includes felony-murder, Iowa Code section 707.2(2), a crime in which defendant need not even have contemplated a killing when commencing a foray into crime. Although first-degree sexual abuse requires the victim to suffer "disabling mental illness, or bodily injury," Iowa Code section 702.18, it was not unreasonable for the legislature to equate the psychological effects of a kidnapping on a rape victim with the affliction of a mental injury. Our criminal statutes do not create a situation where lesser or less serious offenses are punished more severely than applicant's crime; on the contrary, the lesser included offense of second-degree sexual abuse receives the next most severe penalty in the statutory scheme. In imposing enhanced punishment on the defendant who actually commits two serious, life-threatening crimes instead of only one, the legislature was not meting out a disproportionate penalty.

Louisiana, like Iowa, imposes a mandatory life sentence without possibility of parole on those who kidnap with the intent of subjecting their victims to sexual abuse, La.Rev.Stat.Ann. § 14.44 (West 1984). California and West Virginia also impose life imprisonment without parole on a defendant who kidnaps with the intent to collect a ransom and fails to return his or her victim unharmed. Cal.Penal Code § 209 (West 1984); W.Va.Code § 61–2–14a (1977).[2] From the victim's perspective, an abductor's intent to collect a ransom surely is less terrifying than the abductor's intent to inflict sexual abuse; nor is it unreasonable to equate physical harm to the victim with the psychological harm flowing from sexual assault. Alabama imposes a life sentence on the first-degree kidnapper. Ala. Code §§ 13A–5–6(a)(1), 13A–6–43(a)(4) (1982). South Carolina defines kidnapping as a crime of violence, S.C.Code Ann. § 16–23–10 (Law. Co-op. 1977), and punishes it with a life sentence, *id.* § 16–3–910 (1983).

We find no merit in the contention that Iowa's penalty for this crime is unconstitutionally disproportionate.

We have considered other arguments advanced by the applicant even though we have not discussed them in this opinion. The judgment of the postconviction court is affirmed except as modified in subdivision II(C), and the case is remanded with direction.

AFFIRMED AS MODIFIED, REMANDED WITH DIRECTION.

2. In West Virginia, however, the jury can (but need not) expressly request mercy for the defendant.