# IN THE SUPREME COURT OF IOWA

No. 21–1040

Submitted November 16, 2022—Filed December 16, 2022

**STATE OF IOWA,**

Appellee,

vs.

**JOSEPH ALLEN BLOOM,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Wapello County, Gregory G. Milani, Judge.

The defendant seeks further review of a court of appeals decision largely affirming his judgment and sentence for crimes connected to his role in a home invasion. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Christensen, C.J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven, Assistant Attorney General, for appellee.

**CHRISTENSEN, Chief Justice.**

The defendant was convicted of the following offenses for his role in a home invasion that resulted in stolen property and serious physical injuries to the victim: first-degree burglary, first-degree robbery, assault causing serious injury while participating in a public offense, and willful injury causing serious injury. He raises three challenges on appeal. First, the defendant argues the district court erred in failing to grant his motion for judgment of acquittal based on the lack of independent evidence corroborating accomplice testimony. Second, he challenges the district court's failure to merge certain convictions and sentences. Third, the defendant maintains the sentencing enhancements under Iowa Code section 902.11 (2020) based on his prior conviction for vehicular homicide should not have applied to his convictions for first-degree robbery and first-degree burglary.

The court of appeals largely affirmed the district court on all challenges with the exception of the defendant's claim that his conviction for willful injury causing serious injury merged with his conviction for first-degree robbery. The court of appeals remanded with instructions to the district court to merge these convictions. On further review, we also affirm the district court on every issue except for the defendant's merger claim involving his convictions for willful injury causing serious injury and first-degree robbery. Additionally, we definitively hold for the first time that a defendant's prior conviction for vehicular homicide by reckless driving under Iowa Code section 707.6A(2) is a "crime of a similar

gravity" to a forcible felony for purposes of applying the Iowa Code section 902.11 sentencing enhancement. *See* Iowa Code § 902.11.

## I. Background Facts and Proceedings.

On April 5, 2020, Alexies Meier arrived at Michael Nulph's home in a pickup truck to retrieve some of the items she had left there. After Meier entered through the front door, she apologized to Nulph, disabled his home security system, and ran out the door. As Meier exited, two masked men entered and physically assaulted Nulph, leaving him unconscious. When Nulph regained consciousness, he realized he was "just laying there in a pool of blood" with injuries to his face and discovered that the attackers had taken his cell phones, car keys, and cash. Nulph suffered a fractured skull and had to undergo reconstructive surgery to repair the damage to his face.

Police subsequently questioned Meier about the burglary, and she admitted that she went to Nulph's house that night with Anthony Lankford—her boyfriend at the time—and another male, whom she could not name but described as "approximately 45 years old, Hispanic, taller and thinner than Anthony." Meier also recalled the block of a green house where they took the stolen property to, which police were able to confirm belonged to Connie West. West and her roommates informed the police that Joseph Bloom lived with them at the time of Nulph's attack and would often take West's pickup truck.

Meier explained that the trio went from West's house to the AmericInn Hotel, where they attempted to rent a room but were unable to because none of them had any forms of identification with them. Thus, Bloom asked West to rent

the room for them, which West did by presenting her own identification card before leaving the trio at the hotel. Hotel staff later called West to come back and pay the bill. The next morning, Lankford gave Meier "close to $3,000" in cash before she left for work. Meier, Lankford, and Bloom were ultimately arrested for their various roles in Nulph's attack.

The State charged Bloom with five counts: first-degree burglary, a class "B" felony, in violation of Iowa Code section 713.3(1)(*b*), (2) (2020); first-degree robbery, a class "B" felony, in violation of Iowa Code sections 711.1(1)(*a*) and 711.2; first-degree theft, a class "C" felony, in violation of Iowa Code section 714.2(1); assault causing serious injury while participating in a public offense, a class "C" felony, in violation of Iowa Code section 708.3(1); and willful injury causing serious injury, a class "C" felony, in violation of Iowa Code section 708.4(1).

Bloom initially told the investigating police officer that Meier was framing him. He later sent the investigating police officer a letter dated August 20, 2020, to "help clear up some of the claims against [him]." In the letter, Bloom stated that he was at West's house with Meier and Lankford "getting high" when Meier asked if she could borrow his truck "for something." Bloom declared that Meier left with two other men, along with Bloom's cell phone that he had left in the truck.

Before the trial began, Bloom also sent a letter to West that he addressed to her dog, which portrayed a different story than Meier's and West's regarding the night of the assault. Bloom wrote that he "let some chick use my truck" on

the night of the assault, but "I was home with your mom that night. [W]orking on [the] house [until] I had her take me to [a] Hotel and rent a room. [T]hat is the only thing that will stand on truth." Further, Bloom made phone calls from jail repeating the alibi he described in his letter to West's dog and sent cryptic text messages relating to Meier and her intent to testify against him.

The matter proceeded to a four-day jury trial from April 6 through April 9 of 2021. The district court granted Bloom's motion for judgment of acquittal on the first-degree theft charge but allowed the remaining charges for the jury to decide. The jury returned a guilty verdict, leading the district court to enter judgment against Bloom for first-degree burglary, first-degree robbery, assault causing serious injury while participating in a public offense, and willful injury causing serious injury. The district court ordered Bloom's sentences for burglary and robbery—terms of imprisonment not to exceed twenty-five years—to run consecutive to one another. It ordered Bloom's sentences for assault and willful injury—terms of imprisonment not to exceed fifteen years—to run concurrently with those for burglary and robbery.

Bloom filed a timely appeal, which we directed to the court of appeals. The court of appeals reversed the district court in part, concluding Bloom's conviction for willful injury causing serious injury should have merged with his first-degree robbery conviction. Nevertheless, it affirmed the district court on all of Bloom's other challenges and noted resentencing was not required upon remand because the district court had ordered the willful injury sentence to run

concurrently with his first-degree robbery sentence. Bloom sought further review, which we granted.

**II. Standard of Review.**

We review challenges to the sufficiency of the corroborating evidence for correction of errors of law, viewing "the evidence in the light most favorable to the State, even if contradicted, and indulge in every legitimate inference that may be fairly and reasonably deduced from this evidence." *State v. Bugely*, 562 N.W.2d 173, 176 (Iowa 1997). We also review claims of an illegal sentence involving merger or an unauthorized sentencing enhancement for correction of errors at law. *State v. Roby*, 951 N.W.2d 459, 463 (Iowa 2020); *State v. Love*, 858 N.W.2d 721, 723 (Iowa 2015). Our review of double jeopardy claims is de novo. *Roby*, 951 N.W.2d at 463.

**III. Analysis.**

Bloom presents three arguments on appeal. First, he claims that the district court erred in denying his motion for judgment of acquittal based on the lack of independent evidence corroborating Meier's accomplice testimony. Second, Bloom maintains the district court erred in failing to merge certain convictions. Third, he contends the district court erred in applying the sentencing enhancement under Iowa Code section 902.11, which applies in sentencing a defendant for a felony if that defendant has a prior conviction for a forcible felony or crime of similar gravity. *See* Iowa Code § 902.11. We address these issues in turn.

**A. The Sufficiency of the Evidence Corroborating Meier's Testimony.**

Bloom argues that the district court should have granted his motion for directed verdict of acquittal because there was insufficient evidence to corroborate Meier's testimony. Nobody disputes that Meier was an accomplice to the assault on Nulph. Under Iowa Rule of Criminal Procedure 2.21(3),

> A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

This requirement serves two purposes: to independently connect the defendant to the crime and to support the accomplice's credibility given the accomplice's self-interest in blaming the defendant. *State v. Brown*, 397 N.W.2d 689, 694 (Iowa 1986) (en banc).

There is sufficient evidence to create a jury question "if that evidence corroborates some material aspect of the accomplice's testimony tending to connect defendant to the commission of the crime and thereby supports the credibility of the accomplice." *Id.* at 694–95. The evidence "need not be strong or confirm each material fact of the accomplice's testimony" and "may be direct or circumstantial." *Id.* at 695. This is a low bar and one that was met in this case.

Bloom focuses his argument on the fact that Nulph could not identify the defendant as a coperpetrator, so Meier was the only witness to identify Bloom as a coperpetrator. This overlooks the legion of corroborating evidence from other witnesses and Bloom himself. For example, West's testimony corroborated material facts that Meier testified to in connecting Bloom with the crime. West

explained that Bloom was with Lankford on the night of the attack and asked West "to take him to a hotel." West verified the hotel receipt from that night and also noted that she would let Bloom drive her pickup truck, which matched the description of the vehicle the trio used to get to and from Nulph's. Notably, although Nulph could not say with certainty that Bloom was one of the men who attacked him, especially because he had never met or heard of Bloom before the attack, he testified that Bloom "looks familiar as . . . one of the guys that night" and corroborated Meier's description of the two men who attacked him.

Additionally, Bloom did himself no favors in trying to fabricate a defense. A defendant's own admissions are evidence, and these "may be implied by the conduct of the defendant subsequent to a crime, including fabrication, when such conduct indicates a consciousness of guilt." *State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993). We recently reiterated that a defendant's false story "to explain or deny a material fact against him is by itself an indication of guilt and . . . is relevant to show that the defendant fabricated evidence to aid his defense." *State v. Ernst*, 954 N.W.2d 50, 56 (Iowa 2021) (omission in original) (quoting *Cox*, 500 N.W.2d at 25).

Here, Bloom attempted to fabricate an alibi by writing a letter to West suggesting that she testify to a version of events that was not true, sending the investigating police officer a letter changing his story from what he originally told the officer, and making calls from jail to a number of people repeating the fabricated story portrayed in his letter to West. He also sent cryptic text messages from jail seemingly trying to arrange for someone to prevent Meier from testifying

against him. Cumulatively, this evidence was corroborative enough to submit a fact question to the jury asking whether the evidence was sufficient to support Bloom's convictions. *See Brown*, 397 N.W.2d at 694 ("The existence of corroborative evidence is a question of law; the sufficiency of that evidence ordinarily is a question of fact.").

**B. Bloom's Merger Claims.** Bloom challenges the district court's failure to merge his willful injury causing serious injury conviction with his first-degree robbery conviction, as well as its failure to merge his conviction for assault while participating in a public offense causing serious injury with his convictions for first-degree burglary and first-degree robbery. On appeal, the State concedes that Bloom's conviction for willful injury causing serious injury should have merged with his first-degree robbery conviction. We agree. We held in *State v. Hickman*, 623 N.W.2d 847, 852 (Iowa 2001) (en banc), that the offenses of willful injury and first-degree robbery merge because "it is impossible to commit first-degree robbery under the purposely-inflicts-serious-injury alternative without also committing willful injury." Therefore, we remand this case to the district court to merge Bloom's conviction for willful injury into his first-degree robbery conviction.

Nonetheless, we reject Bloom's other merger claim that his conviction for assault while participating in a public offense causing serious injury merges with his convictions for first-degree burglary and first-degree robbery. Under Iowa Code section 701.9,

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person

is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

"This statute 'codifies the double jeopardy protection against cumulative punishments.' " *Roby*, 951 N.W.2d at 464 (quoting *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995)).

While the Double Jeopardy Clause of the United States Constitution prevents the court from imposing a punishment beyond what the legislature intended, the legislature "can provide for multiple punishments for separate offenses that overlap." *Id.* But, merger only applies when there is complete overlap between two offenses. *See State v. McKettrick*, 480 N.W.2d 52, 57 (Iowa 1992). We compare the elements of the two offenses to make this determination, examining "whether it is possible to commit the greater offense without also committing the lesser offense." *Roby*, 951 N.W.2d at 464 (quoting *Halliburton*, 539 N.W.2d at 344).

Bloom contends the offenses merge because the assault conviction "does not contain an element independent of" the burglary and robbery convictions. Although felony burglary is a common element in both first-degree burglary and assault while participating in a public offense, the convictions do not merge because "it is possible to commit first-degree burglary . . . without actually assaulting someone." *State v. Daniels*, 588 N.W.2d 682, 684 (Iowa 1998). Namely, assault while participating in a public offense "contains an element not essential to proof of first-degree burglary, that is, commission of an assault." *Id.* Likewise, Bloom's conviction for assault while participating in a public offense

does not merge with his conviction for first-degree robbery because the assault conviction required the jury to find that Bloom "was participating in the crime of Burglary" when he "caused a serious injury to [Nulph]." Participation in a burglary is not an element of first-degree robbery, so merger does not apply because the assault conviction "requires proof of an additional fact which [first-degree robbery] does not." *McKettrick*, 480 N.W.2d at 57 (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

This conclusion does not end our analysis because we take a two-step approach, examining "[w]hether the legislature intended multiple punishments for both offenses." *Roby*, 951 N.W.2d at 465 (quoting *Halliburton*, 539 N.W.2d at 344). We answered that question in *State v. Perez*, 563 N.W.2d 625, 628 (Iowa 1997), when we held that Iowa Code section 708.3 criminalizing assault while participating in a public offense, "contemplates punishment for two offenses—the assault resulting in injury *as well as* the predicate felony." Consequently, merger was not required because the legislature intended double punishment for the offenses at issue.

**C. The Effect of Bloom's Prior Vehicular Homicide Conviction on His Sentence.** Under Iowa Code section 902.11, anyone "serving a sentence for conviction of a felony, who has a criminal record of one or more prior convictions for a forcible felony or a crime of a similar gravity," must serve at least one-half of the term of imprisonment before being eligible for parole or work release. The district court applied this sentencing enhancement to Bloom's sentence based on his prior conviction for vehicular homicide, which was predicated on the fact

that he caused "a fatal traffic accident" by eluding or driving recklessly. *State v. Bloom*, No. 04–0694, 2005 WL 67594, at *1 (Iowa Ct. App. Jan. 13, 2005). Bloom argues this prior conviction is not "a crime of a similar gravity" to a forcible felony, so the district court erred in applying the sentencing enhancement under section 902.11.

Specifically, Bloom maintains this prior conviction does not qualify because it "is not a specific intent crime; rather it is a crime involving negligence or recklessness." *See* Iowa Code § 707.6A(2) ("A person commits a class 'C' felony when the person unintentionally causes the death of another . . . ."). In doing so, Bloom seems to read a distinction that is not there by noting that our court in *State v. Grimes*, 569 N.W.2d 378 (Iowa 1997), "points out that each of the crimes that are listed as forcible felonies have an element of specific intent to do harm to another person." But we never mentioned this in *Grimes*. Nor is it legally accurate.

Iowa Code section 702.11 defines a "forcible felony" as "any felonious child endangerment, assault, murder, sexual abuse, kidnapping, robbery, human trafficking, arson in the first degree, or burglary in the first degree," with certain enumerated exceptions. Many crimes encompassed in this definition do not require an element of specific intent to harm another person. For instance, an individual commits felonious child endangerment through reckless conduct by "[k]nowingly act[ing] in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety." *Id.* § 726.6(1)(*a*). Likewise, first-degree burglary only requires that an individual "recklessly inflicts

bodily injury on any person." *Id.* § 713.3(1)(*c*). Felony murder, too, can be committed without specific intent to do harm to another person, as it only requires that the individual "kills another person while participating in a forcible felony." *Id.* § 707.2(1)(*b*); *see also Lamphere v. State*, 348 N.W.2d 212, 220 (Iowa 1984) ("[F]irst-degree murder in Iowa includes felony-murder, Iowa Code section 707.2(2), a crime in which defendant need not even have contemplated a killing when commencing a foray into crime."). Needless to say, the specific intent to do harm to another person is not the deciding factor in determining whether a crime is a forcible felony or of a similar gravity to a forcible felony.

In *Grimes*, we were tasked with determining whether second-degree burglary was a crime of a similar gravity to a forcible felony under Iowa Code section 902.11. *Grimes*, 569 at 380. We explained that the legislature included first-degree burglary in the list of forcible felonies, and "it would simply have provided that 'burglary' is a forcible felony without specifying only first-degree burglary" if it wanted second-degree burglary to be considered a crime of similar gravity. *Id.* Second, we examined whether the crime "involve[d] a risk to persons" or "an element of victim risk." *Id.* Because second-degree burglary as defined at the time of the conviction "did not involve an element of victim risk," we held that it was not a crime of a similar gravity and the sentencing enhancement under Iowa Code section 902.11 did not apply. *Id.*

But the focus on victim risk alone may be overbroad when it is applied to homicide or manslaughter convictions based solely on the victim's death. For example, the Iowa Court of Appeals has affirmed an involuntary manslaughter

conviction for an adult motorcycle owner who "offer[ed] an inexperienced, unlicensed minor the opportunity to drive his motorcycle while he rides on the back, g[ave] inadequate instruction on the vehicle operation, and permit[ted] the minor to drive recklessly," resulting in the minor running over and killing a child. *State v. Travis*, 497 N.W.2d 905, 907 (Iowa Ct. App. 1993). Whether the sentencing enhancement under Iowa Code section 902.11 would apply in that type of case is a question for another day.

Here, the dispositive factor in our determination that Bloom's prior conviction for vehicular manslaughter rises to a crime of similar gravity to a forcible felony is the additional element associated with reckless driving or eluding. Namely, the driver's awareness of the risk of harm that reckless driving creates. Typically, a person drives recklessly "when they consciously or intentionally drive and they know or should know that by driving they create an unreasonable risk of harm to others." *State v. Conyers*, 506 N.W.2d 442, 444 (Iowa 1993). Under the law, a significant degree of danger is inherent in reckless conduct, as it is "conduct so obviously dangerous that the defendant knew or should have foreseen that harm would flow from it." *State v. Rodriguez*, 804 N.W.2d 844, 849–50 (Iowa 2011) (quoting *State v. Sutton*, 636 N.W.2d 107, 112 (Iowa 2001)). Ultimately, Bloom's conviction for vehicular homicide by eluding or driving recklessly under Iowa Code section 707.6A(2) is a conviction for killing another through reckless conduct where Bloom disregarded the obvious risk of serious harm that would flow from his conduct. *See id.* Thus, the district court

correctly applied the sentencing enhancement under Iowa Code section 902.11 to Bloom.

We also find support for this conclusion from *Ball v. State*, 208 So. 3d 327, 329–30 (Fla. Dist. Ct. App. 2017), in which a Florida appellate court held that a similar sentencing enhancement applied based on the defendant's conviction for vehicular homicide. There, Florida law required the application of "a prison releasee reoffender" sentencing enhancement for any defendant "who had committed or attempted to commit" one of several enumerated offenses or " '[a]ny felony that involves the use or threat of physical force or violence against an individual' within the requisite time period." *Id.* at 328–29 (alteration in original) (quoting Fla. Stat. § 775.082(9)(a)(1)(o)). Although vehicular homicide was not an enumerated offense under the statute, the Florida appellate court held that it was a qualifying prison releasee reoffender offense because it could not be committed "without the use of physical force or violence against an individual" through "reckless driving resulting in death." *Id.* at 330 n.3.

In summary, when Bloom committed vehicular homicide, he "caused the death of another human. The seriousness of this harm, in the final analysis, is unmatched in the broad spectrum of crimes." *State v. Izzolena*, 609 N.W.2d 541, 550 (Iowa 2000) (en banc). The sentencing court in Bloom's vehicular homicide case acknowledged as much, declaring, "[T]rying to quantify the harm done to the victims of this crime and the extended family, I find it's impossible to quantify that harm. There is no yardstick to measure the damage this young man's done." *Bloom,* 2005 WL 67594, at *5. Given the severity of the harm inherent in

vehicular homicide, the district court correctly concluded that it was a crime of a similar gravity to a forcible felony under Iowa Code section 902.11 in applying the sentencing enhancement to Bloom.

**IV. Conclusion.**

We remand this case to the district court for the entry of an order merging Bloom's conviction for willful injury causing serious injury with first-degree robbery. Nevertheless, resentencing is not required because the district court ordered Bloom's sentence for willful injury to run concurrently with his conviction for first-degree robbery. We affirm on all other grounds.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except May, J., who takes no part.