STATE of Iowa, Appellee,

v.

Michael Robert AYERS, Appellant.

No. 90–1242.

Supreme Court of Iowa.

Dec. 24, 1991.

Linda Del Gallo, State Appellate Defender, and B. John Burns, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen., and William E. Davis, County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

Defendant's conviction of involuntary manslaughter stemmed from his supplying a weapon to a minor. He contends on appeal that the evidence fails to show his conduct caused the death in question. Defendant's conduct was plainly outrageous and clearly criminal. We however agree it did not amount to manslaughter. We accordingly reverse.

In November 1989 a .38 caliber handgun was taken in a robbery. It was later obtained by defendant Ayers, who regularly bought and sold stolen items. Defendant sold the gun to a minor for five dollars and a switchblade knife. Before closing the sale, defendant test fired the weapon, changed its grips, and ground out its serial number.

A few days later the minor celebrated his sixteenth birthday at an apartment with friends. His girlfriend arrived with presents. Meanwhile the minor was showing off the loaded weapon to his friends. He explained that his girlfriend "was on the stairs and we [were] there talking, and I pulled [the handgun] out to show ... to her, and when I [did] she pushed it away, and it went off." The girlfriend was shot in the forehead and died instantly. Ayers was not present at the death; he was not involved with the birthday party and did not even know of its occurrence.

I. The sale of the gun was flagrantly criminal because, in addition to the gun having been stolen, the sale was to a person under twenty-one years of age who did not possess a permit to acquire a handgun. Iowa Code § 724.22 (1989).

II. Defendant was tried and convicted of involuntary manslaughter which Iowa Code section 707.5(1) defines as follows:

A person commits a class "D" felony when the person unintentionally causes the death of another person by the commission of a public offense other than a forcible felony or escape.

The underlying public offense must be committed recklessly in order to form the basis of involuntary manslaughter. *State v. McFadden*, 320 N.W.2d 608, 611 (Iowa 1982); *State v. Conner*, 292 N.W.2d 682, 686 (Iowa 1980). Recklessness is conduct that shows a willful or wanton disregard for the safety of others. *State v. Kernes*, 262 N.W.2d 602, 605 (Iowa 1978). A defendant's reckless conduct must proximately cause the death in order to support a manslaughter conviction. *McFadden*, 320 N.W.2d at 613; *State v. Marti*, 290 N.W.2d 570, 584–85 (Iowa 1980). Ayers' criminal acts were unquestionably reckless; the dispute in the case is on the showing of proximate cause.

■ III. The concepts of proximate cause are much the same in civil and criminal cases; instructions used in civil trials are appropriate for use in criminal trials. *State v. Caldwell*, 385 N.W.2d 553, 556 (Iowa 1986); *Marti*, 290 N.W.2d at 584. Proximate cause is based on the concept of foreseeability. *Caldwell*, 385 N.W.2d at 556. We have said that the foreseeability requirement, coupled with the requirement of recklessness, will prevent the possibility of harsh or unjust results in involuntary manslaughter cases. *McFadden*, 320 N.W.2d at 613.

■ Even if the actor's conduct is a cause-in-fact of the harm, the actor's liability may be cut off if an intervening cause breaks the chain of events. *Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 349 (Iowa 1991). In order to relieve the actor of responsibility, the intervening event must be a superseding cause of the harm. *Marti*, 290 N.W.2d at 586. Proximate cause issues are most often questions for the jury; only in exceptional cases can proximate cause be decided as a matter of law. *Iowa Elec. Light & Power v. General Elec. Co.*, 352 N.W.2d 231, 234 (Iowa 1984); Iowa R.App.P. 14(f)(10).

In *Marti* we upheld a conviction of involuntary manslaughter, noting Marti caused his girlfriend's death when he loaded a gun and placed it beside her. 290 N.W.2d at 585. Marti was physically present when his girlfriend shot herself and could foresee she planned to kill herself because she had previously said she would.

In *State v. Shimon*, 182 N.W.2d 113, 115–16 (Iowa 1970), we affirmed a manslaughter conviction after concluding that Shimon's participation in a drag race could be considered a proximate cause of the death of two passengers in another vehicle with which he collided while drag racing. In *McFadden* we found McFadden's participation in a drag race was the proximate cause of the death of two people in two different vehicles, even though McFadden did not actually collide with either vehicle. *McFadden*, 320 N.W.2d at 617.

■ The trial court felt that our *Marti* holding controlled the question here. We think not. The defendants in *Marti*, *McFadden*, and *Shimon*, who were all present when the death occurred, had much greater participation in the events immediately leading to the deaths. A defendant need not actively participate in the immediate cause of death in order to be held criminally liable for causing the unintentional death of another. *See, e.g., Marti*, 290 N.W.2d at 585–86; *Shimon*, 182 N.W.2d at 114. But proximity to the harm is an important factor. *Kelly*, 476 N.W.2d at 349.

■ More is required than appears here to support a showing of proximate cause in a manslaughter case. The missing ingredient is a more direct connection between Ayers and the act which killed the young victim. It is not enough that Ayers' conduct was outrageous and criminal. A more direct and specific foreseeability was required. We understand the rule to be as follows:

One is deemed guilty of culpable homicide only if the act causing death is either actually or constructively his; death must have resulted from an act committed by the accused or by someone acting in concert with him, or acting in furtherance of a common object or purpose, as distinguished from someone acting independently or in opposition to him ... where the criminal liability arises from the act of another, it must appear that

the act was done in furtherance of the common design, or in prosecution of the common purpose for which the parties were assembled or combined together....

40 Am.Jur.2d *Homicide* § 22, at 314 (1986). *See also* 40 C.J.S. *Homicide* § 90, at 473–74 (1991).

REVERSED.