STATE of Iowa, Appellee,

v.

Jeffrey James TRAVIS, Appellant.

No. 91–1460.

Court of Appeals of Iowa.

Feb. 2, 1993.

Jeffrey L. Walters of Reynolds & Kenline Law Office, Dubuque, for appellant.

Bonnie J. Campbell, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen., Fred H. McCaw, County Atty., and Ralph R. Potter, Asst. County Atty., for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and HABHAB, JJ.

OXBERGER, Chief Judge.

Defendant Jeffrey Travis appeals his conviction of involuntary manslaughter as an aider and abettor. *See* Iowa Code §§ 707.5(1), 703.1, and 703.2 (1989). On appeal, he challenges the sufficiency of the evidence and certain evidentiary rulings made by the district court. We affirm.

I. *Background Facts and Proceedings.*

From the evidence presented at trial, a jury could have found the following facts. On September 20, 1990, defendant rode his newly-purchased motorcycle to Smith's Cycle to consult with motorcycle mechanic, Chris Smith. Mr. Smith told the defendant the motorcycle's clutch cable was severed and was not safe to operate. The defendant continued to operate the motorcycle throughout that day. Within the hour preceding the collision, several neighbors observed the defendant driving the motorcycle in a "jerky" fashion at inconsistent

speeds up and down the same street. The tires of the motorcycle squealed and several neighbors instructed their children to stay away from the street. One person testified she estimated the speed of the motorcycle at fifty miles per hour ten to fifteen minutes prior to the collision. The defendant was also observed raising the front of the motorcycle off the ground and driving on the sidewalk and front yards. The defendant knew several small children were playing in the area. During most of that time, Jason Engler, defendant's fifteen-year-old friend, was a passenger on the back of the motorcycle. Engler testified he thought Travis was driving "pretty fast", something was apparently wrong with the motorcycle, and Travis was operating the motorcycle recklessly.

Travis and Engler stopped riding the motorcycle and played basketball amidst a group of small children. The defendant then offered Engler the opportunity to operate the motorcycle. Travis told an investigating officer at the scene that Engler was fifteen years old. Travis knew Engler had owned and operated a moped, but had no reason to believe Engler had ever operated a motorcycle. He had never seen Engler operate any vehicle other than a moped.

Engler agreed to operate the motorcycle. Travis instructed him on how to start the motorcycle, i.e., a "push start". Travis also briefly instructed Engler regarding the location of the hand and foot brakes and accelerator. Engler testified Travis told him how to shift gears and he would not have known how to do so had Travis not instructed him. Travis instructed Engler to accelerate, but did not instruct him to "slow down" at any time while he was operating the motorcycle.

Engler testified he observed the speedometer only once, turning a corner approximately 680 feet from the collision, at which point it read thirty-five or thirty-six miles per hour. He testified his moped would not travel at that high rate of speed.

Engler and Travis testified they first observed the victim, six-year-old Kara Schwartz, when they were approximately four feet away from her. Engler did not attempt to swerve or brake and testified Travis did not instruct him likewise. The motorcycle hit Schwartz, sending her approximately seventy feet and killing her. The motorcycle skidded approximately twenty feet before coming to a stop. The victim's ten-year-old brother testified that although it was nearly dark, the motorcycle did not have its headlights on. The parties stipulated sunset occurred at 7:05 p.m. The collision occurred shortly after 7:30 p.m.

Engler pled guilty to involuntary manslaughter. Following a jury trial, the defendant was found guilty as an aider and abettor in involuntary manslaughter.

The defendant appeals.

## II. *Sufficiency of Evidence.*

The defendant contends there was insufficient evidence to sustain the jury's verdict. He claims the State failed to show he acted recklessly and failed to establish proximate cause.

Our scope of review is on assigned error only. Iowa R.App.P. 4. The standard of review in challenging the sufficiency of evidence is well established. *State v. Lampman*, 342 N.W.2d 77, 81 (Iowa App. 1983). We will uphold a verdict where there is substantial evidence in the record tending to support the charge. *State v. Aldape*, 307 N.W.2d 32, 39 (Iowa 1981).

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the state, including legitimate inferences and presumptions that fairly and reasonably may be deduced from the evidence in the record. *State v. Bass*, 349 N.W.2d 498, 500 (Iowa 1984); *State v. Hall*, 371 N.W.2d 187, 188 (Iowa App.1985). Direct and circumstantial evidence are equally probative so long as the evidence raises "a fair inference of guilt and [does] more than create speculation, suspicion, or conjecture." *State v. Hamilton*, 309 N.W.2d 471, 479 (Iowa 1981). It is necessary to consider all the evidence in the record, and not just the evidence supporting the verdict, to deter-

mine whether there is substantial evidence to support the charge. *Bass,* 349 N.W.2d at 500; *Hall,* 371 N.W.2d at 188. Substantial evidence means evidence which would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *State v. LeGear,* 346 N.W.2d 21, 23 (Iowa 1984); *Hall,* 371 N.W.2d at 188.

Travis was convicted of involuntary manslaughter as an aider and abettor, pursuant to Iowa Code section 707.5 (1989), which provides, in pertinent part:

■ A person commits a class "D" felony when one person unintentionally causes the death of another person by the commission of a public offense other than a forcible felony or escape.

■ The underlying public offense must be committed recklessly in order to form the basis of involuntary manslaughter. *State v. McFadden,* 320 N.W.2d 608, 611 (Iowa 1982). In order to establish recklessness, the conduct must show a willful or wanton disregard for the safety of others. *State v. Ayers,* 478 N.W.2d 606, 608 (Iowa 1991), citing *State v. Kernes,* 262 N.W.2d 602, 605 (Iowa 1978). "Ordinarily, such conduct should be conscious and intentional, creating an unreasonable risk of harm to others, where such risk is or should be known to defendants." *Kernes,* 262 N.W.2d at 605.

The fighting issue in this case is whether an adult motorcycle owner possesses the requisite recklessness necessary to sustain a conviction for involuntary manslaughter when he offers an inexperienced, unlicensed minor the opportunity to drive his motorcycle while he rides on the back, gives inadequate instruction on the vehicle operation, and permits the minor to drive recklessly.

Numerous courts have held the owner or person in control of a motor vehicle criminally liable for a homicide committed in operating a vehicle, not only when driving it personally, but also when procuring or permitting the vehicle to be driven by another person who is [o]n the vehicle with him or her. *Story v. United States,* 16 F.2d 342, 344 (D.C.Cir.), *cert. denied,* 274 U.S. 739, 47 S.Ct. 576, 71 L.Ed. 1318 (1927).

*See also* 7A Am.Jur.2d *Automobiles and Highway Traffic* § 326 (1980). Generally, such liability arises when the owner or person in control of a motor vehicle puts it in the immediate control of a careless and reckless driver, remains in [or on] the vehicle and permits the driver, without protest, to so recklessly operate the vehicle as to cause the death of another. *Story,* 16 F.2d at 344. *See e.g., Brown v. State,* 129 Ga. App. 743, 201 S.E.2d 14, 15 (1973) (upholding conviction for involuntary manslaughter even though evidence could establish defendant who owned vehicle was not driving at time of collision but had earlier been driving and had not protested reckless manner in which driver was proceeding); *State v. Hopkins,* 147 Wash. 198, 265 P. 481 (1928) (affirming conviction for involuntary manslaughter when reasonable jury could conclude owner-defendant entrusted her vehicle to likely intoxicated driver while she rode as passenger).

The evidence presented was such that a reasonable jury could conclude Travis's conduct was "reckless." Ample evidence supported the finding Travis knew Engler was an underage driver. Engler also testified Travis knew he had only operated a moped prior to that day. Travis had never seen Engler operate any vehicle other than a moped. Engler testified Travis did not advise him to slow down nor instruct him in any other cautionary tone. Ample evidence supported finding Travis knew there were children present in the neighborhood. In addition, witnesses observed Travis driving fast, driving on curbs, sidewalks and lawns, and lifting his motorcycle off the front wheel while riding. We hold Travis was reckless when he offered his motorcycle to an inexperienced minor to drive, rode as a passenger, failed to give proper cautionary instruction in a busy residential neighborhood where children are known to be present and permitted the minor to drive recklessly.

In addition, "we are obligated to affirm an appeal where any proper basis appears for a trial court's ruling, even though it is not one upon which the court based its

holding." *Citizens First Nat'l Bank v. Hoyt,* 297 N.W.2d 329, 332 (Iowa 1980).

To support a conviction on a theory on aiding and abetting, the record must contain substantial evidence to show the defendant assented to or lent countenance and approval to the criminal act either by an act of participation in it or in some manner encouraging it prior to or at the time of commission. *State v. Miles,* 346 N.W.2d 517, 520 (Iowa 1984).

Although the defendant's mere presence is insufficient to support a conviction on a theory of aiding and abetting, the requisite participation can be inferred from circumstantial evidence including presence, companionship and conduct before and after the offense is committed. *Id.*

Travis did not merely assent to Engler's driving his motorcycle, he initiated it. While riding as passenger, he failed to provide sufficient instruction nor did he tell Engler to slow down or drive with caution. In addition, while Travis was earlier driving the vehicle and Engler accompanied him as passenger, he role modeled driving the vehicle in a reckless manner. We find the evidence of Travis's conduct sufficient to support the charge of aiding and abetting.

### III. *Proximate Cause*

Travis next contends his conduct was not the proximate cause of the victim's death. It is well established that the definition of "proximate cause" in criminal cases is much the same as its definition in civil cases. *State v. Hubka,* 480 N.W.2d 867, 869 (Iowa 1992); *Ayers,* 478 N.W.2d at 608; *State v. Caldwell,* 385 N.W.2d 553, 556 (Iowa 1986). Generally, a defendant's conduct is the proximate cause of injury or death to another if (1) his conduct is a "substantial factor" in bringing about the harm and (2) there is no other rule of law relieving the defendant of liability because of the manner in which his conduct resulted in the harm. *Hubka,* 480 N.W.2d at 869; *Kelly v. Sinclair Oil Corp.,* 476 N.W.2d 341, 349 (Iowa 1991). Proximate cause is based on the concept of foreseeability. *Ayers,* 478 N.W.2d at 608.

When conduct or forces occur after a defendant's conduct, the defendant may be relieved of criminal responsibility if the intervening events break the chain of causal connections between the defendant's conduct and the victim's death. *Hubka,* 480 N.W.2d at 869; *Ayers,* 478 N.W.2d at 608. In order to relieve the actor of responsibility, the intervening event must be the superseding cause of harm. *Ayers,* 478 N.W.2d at 608. However, responsibility for criminal acts cannot be escaped merely because other factors contributed to the injury or death, provided those factors were not the sole proximate cause of death. *Hubka,* 480 N.W.2d at 869.

Based on the foregoing principles, we conclude the defendant in this case cannot be relieved of criminal responsibility merely because he was not the driver of the motorcycle. While Engler was the actual driver of the vehicle, that is not sufficient to defeat the causal connection as the superseding cause of death. The defendant's knowledge of Engler's age, knowledge of the motorcycle's condition, knowledge of children present, and presence as both an instructor and passenger on the motorcycle serve to satisfy the requisite foreseeability.

In *Ayers,* our supreme court noted:

One is deemed guilty of culpable homicide only if the act causing death is either actually or constructively his; death must have resulted from an act committed by the accused or *by someone acting in concert with him, or acting in furtherance of a common object of purpose,* as distinguished from someone acting independently or in opposition to him.... Where the criminal liability arises from the act of another, it must appear that the act was done in furtherance of the common design, or in prosecution of the common purpose for which the parties were assembled or combined together....

478 N.W.2d at 608–09; quoting 40 Am. Jur.2d *Homicide* § 22 at 314 (1986) (emphasis added).

In *Ayers,* the court reversed an involuntary manslaughter conviction where the de-

fendant had sold a stolen gun to a minor who did not possess a handgun permit. 478 N.W.2d at 607. The minor later accidentally discharged the gun, causing the death of another. *Id.* The court noted the importance of proximity to the harm in reversing the conviction. *Id.*

We find *McFadden,* 320 N.W.2d at 617, persuasive to our line of reasoning and distinguish it from *Ayers.* In *Ayers,* the defendant had no subsequent involvement with the defendant. In *McFadden,* the supreme court upheld an involuntary manslaughter conviction resulting from participation in a drag race. *Id.* The court found the defendant's participation in a drag race was the proximate cause of the death of two people in two different vehicles, even though the defendant did not actually collide with either vehicle. *Id.*

The defendant's participation in Engler's operation of the vehicle, instruction in its use, and knowledge of surrounding circumstances support a finding of proximate cause. We hold the evidence was sufficient to support a reasonable juror's finding the defendant was a proximate cause of the victim's death.

We have considered the other issues on appeal and uphold the decision of the trial court.

**AFFIRMED.**