Phillip L. RUSSO, Jr., Administrator of the Estate of Bruce V. Quagliato, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 2:98CV842.

United States District Court, E.D. Virginia, Norfolk Division.

Feb. 19, 1999.

James R. McKenry, Bryan K. Meals, Shawn Renee Salyer, Heilig, McKenry, Fraim and Lollar, Norfolk, VA, for Plaintiff.

Lawrence R. Leonard, Assistant U.S. Attorney, Norfolk, VA, for Defendant.

*OPINION AND ORDER*

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The government argues that the claim should be dismissed because, as a matter of law, the conduct at issue was not a proximate cause of injury in this case. For the reasons detailed below, the motion to dismiss is DENIED.

## I. Factual History

On March 25, 1997, Bruce V. Quagliato, the decedent in this case, mistakenly drove onto the Naval Amphibious Base at Little Creek, in Norfolk, Virginia. Once on the base, he became involved in a traffic incident with military police officers. Quagliato then proceeded to leave the base, at which time base dispatchers radioed the following message to the Virginia Beach police: "I have officers down." Complaint ¶ 9. According to the complaint, that phrase is "universally recognized by law enforcement personnel as connoting a police officer has been killed or gravely injured." Complaint ¶ 10. In fact, no officers were killed or injured. The erroneous transmission was apparently never corrected.

When he left the base, Quagliato proceeded south on Independence Boulevard into the City of Virginia Beach. Little Creek Base police officers initiated a low-speed pursuit of Quagliato and continued to pursue him for several miles after he left the base. Plaintiff contends that this action lent credence to the earlier, erroneous transmission that "officers [were] down." After receiving the transmission, Virginia Beach police took over the low-speed pursuit of Quagliato on Independence Boulevard. Eventually, the Virginia Beach police succeeded in forcing Quagliato's car off the road. Then, allegedly within seconds, "without provocation and in

gross violation of his rights, Virginia Beach Police officers opened fire on Quagliato, based in part, on the belief that he had killed or gravely injured fellow police officers." Complaint ¶ 18. The fusillade of bullets struck and killed Quagliato, who was pronounced dead at the scene by emergency rescue personnel. The complaint alleges that the erroneous communication, the failure to correct that error, and the start of pursuit by base personnel was a proximate cause of Quagliato's death and that it was reasonably foreseeable that radioing Virginia Beach police officers that officers were "down" would lead to Quagliato's injury or death. Complaint ¶ 22.

On August 18, 1997, plaintiff-administrator submitted a claim for $2,000,000 to the Navy, which denied the claim on March 20, 1998. Plaintiff-administrator filed this suit under the Federal Tort Claims Act ("FTCA") on July 27, 1998, and, after seeking and being granted an extension of time to file a responsive pleading, the government moved to dismiss the case. The government seeks to have the complaint dismissed under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted.

## II. Discussion

When deciding whether to grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the factual allegations in the plaintiff's complaint must be accepted as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A Rule 12(b)(6) motion should only be granted "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When ruling on a Rule 12(b)(6) motion, a court should only consider the allegations in the pleadings, disregarding affidavits or other materials. *Scheuer v. Rhodes*, 416

U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

■ The parties agree that, under the FTCA, Virginia substantive law applies to this case. *Sage v. United States*, 974 F.Supp. 851, 859 (E.D.Va.1997). Both sides also agree that, in Virginia, questions of proximate cause and foreseeability are questions for the trier of fact to decide and only become a question of law if undisputed facts are susceptible of only one inference. *Poliquin v. Daniels*, 254 Va. 51, 486 S.E.2d 530, 534 (1997); *Hubbard v. Murray*, 173 Va. 448, 3 S.E.2d 397, 402 (1939).

■ In Virginia, an injury is proximately caused by a defendant's negligence if the injury is the natural and probable consequence of the negligence. *Wyatt v. Chesapeake & Potomac Tel. Co.*, 158 Va. 470, 476, 163 S.E. 370 (1932). "The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again." *Id.* at 479, 163 S.E. 370. Furthermore, a consequence is only "probable" if it occurs "according to ordinary and usual experience." *Id.* In other words, if something occurs so frequently that it is expected to happen again, it is then reasonably foreseeable. It is also a well-settled principle of Virginia tort law that there may be more than one proximate cause for an event. *Jenkins v. Payne*, 251 Va. 122, 465 S.E.2d 795, 799 (1996); *Etheridge v. Norfolk So. R. Co.*, 143 Va. 789, 129 S.E. 680, 683 (1925).

The government raises two arguments in support of the motion to dismiss. First, the government argues that the shooting of Quagliato was not the natural and probable consequence of the allegedly negligent report that officers were down, and was, therefore, not foreseeable as a matter of law. Second, the government argues that Quagliato's shooting by the Virginia Beach police was so "highly extraordinary" that it constituted a superseding, intervening cause of the injury. Each of these arguments is addressed in turn below.

## A. Foreseeability

■ The government claims that Quagliato's shooting was not reasonably foreseeable because the actions of the Virginia Beach police violated the clearly established constitutional standard for the use of deadly force. *See Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (holding that deadly force is only authorized when the officer has probable cause to believe that the suspect poses a significant and immediate threat of death or serious injury to the officer or others). According to the government, the *Garner* standard is so well-established that any deviation is improbable and unforeseeable. The government would have this court adopt a rule of law holding that constitutionality is the outer limit of reasonable foreseeability in the tort context. Under Virginia law, in other words, the government is asking this court to find as a matter of law that unconstitutional actions occur so infrequently that they are never "the natural and probable consequences," *Wyatt*, 158 Va. at 479, 163 S.E. 370, of an action.[1]

The government offers no case law in support of this proposition and simply has not advanced a tenable argument. The government's argument is, in point of fact, contrary to logic and well-established principles of tort law. As plaintiff correctly points out, the word "reasonable" has two, separate and distinct, legal definitions, which the government is erroneously attempting to equate. In the constitutional context, reasonableness is a constitutional standard used to determine whether a search or seizure is constitutional. On the other hand, in the tort context, "reasonable" denotes the standard being used as an objective, and not a subjective, one.

As already noted,[2] it simply is not the case that unreasonable, i.e., unconstitutional, searches and seizures occur so infrequently that they should be considered not reasonably foreseeable as a matter of law. *See, e.g., Sivard v. Pulaski County*, 959 F.2d 662 (7th Cir.1992) (holding that arrestee's allegation that he was detained for seventeen hours without justification or probable cause stated a cause of action for violation of the Fourth Amendment); *Watts v. Graves*, 720 F.2d 1416 (5th Cir. 1983) (holding that allegations of warrantless search of safety deposit box stated § 1983 cause of action for violation of Fourth Amendment); *Smith v. Heath*, 691 F.2d 220 (6th Cir.1982) (holding that evidence was sufficient to find that § 1983 plaintiff was arrested in violation of Fourth Amendment). To hold otherwise would vitiate all constitutional tort litigation because, by definition, a constitutional violation must occur before a constitutional tort action may be brought. *Heath*, 691 F.2d at 223–25 (finding that constitutional violation occurred before considering the propriety of damages award).

---

1. However, unconstitutional actions do occur frequently enough that they can be expected to happen again. While not implying that unconstitutional actions are the norm, they are likewise not the exception. They simply do occur with some frequency, as the case reporters are replete with instances of constitutional violations by law enforcement and other state officials. *See, e.g., Simmons v. Dickhaut*, 804 F.2d 182 (1st Cir.1986) (holding that seizure of prisoner's legal materials and interference with his access to courts was violation of Sixth Amendment); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1576 (11th Cir.1987) (holding that excessive force used by police in subduing plaintiff, including unnecessary chokehold and kneeing in groin, stated constitutional violation and evidence

was sufficient to support jury verdict in favor of plaintiff); *Lundgren v. McDaniel*, 814 F.2d 600, 603 (11th Cir.1987) (holding that evidence was sufficient to support finding of constitutional violation where police shot and killed unarmed storekeeper who in no way posed a danger to the officers); *Griffin v. Hilke*, 804 F.2d 1052 (8th Cir.1986) (holding that use of excessive force on unarmed fleeing felon was substantive due process violation); *Clark v. Beville*, 730 F.2d 739 (11th Cir.1984) (holding that evidence was sufficient to support jury verdict that police officer's arrest of plaintiff was unreasonable and involved excessive force).

2. *See supra* note 1.

Under the rule of law proposed by the government in this case, the causation prong of a constitutional tort could not be proven because the constitutional violation would not be reasonably foreseeable. *But see Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir.1978) (holding that causal connection in § 1983 action may be attributed to person who sets in motion acts by others "which the actor knows or reasonably should know would cause others to inflict the constitutional injury"); *see also Waddell v. Forney,* 108 F.3d 889, 894 (8th Cir.1997)(adopting principle stated in *Duffy* ); *Spell v. McDaniel,* 591 F.Supp. 1090, 1110 (E.D.N.C.1984) (adopting principle stated in *Duffy* ).[3]

Moreover, while holding that negligence cannot result in a constitutional due process violation under the Fourteenth Amendment, the Supreme Court has "not rule[d] out the possibility that there are other constitutional provisions that would be violated by mere lack of care." *Daniels v. Williams,* 474 U.S. 327, 334, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).[4]

■ As the discussion above demonstrates, constitutionality is not the outer limit of whether a particular result is or is not foreseeable. Therefore, the proper focus in the instant case is not on the constitutionality of the Virginia Beach police's actions, but on whether the erroneous transmission was a proximate cause of Quagliato's death, regardless of whether the police acted constitutionally or not. With the elimination of the constitutional "red herring," the facts as alleged by plaintiff give rise to a reasonable inference that the erroneous transmission by the Little Creek Base police may have been a proximate cause of Quagliato's shooting.

Keeping in mind that proximate cause is a question of fact for the jury, unless the facts are susceptible of only one inference, *Poliquin,* 486 S.E.2d at 534, the court

---

**3.** In fact, as *Duffy, Waddell, Spell,* and the other § 1983 liability cases cited herein demonstrate, it is well-settled that standard tort proximate cause principles apply even when the result of defendant's action is a constitutional violation. *See Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (holding that § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions"). This conclusion is bolstered by the fact that in Virginia, as in many states, "the principles applicable to a finding of proximate cause ... are constant whether considered in a civil or criminal context." *Gallimore v. Commonwealth,* 246 Va. 441, 436 S.E.2d 421, 425 (1993); *see, e.g., People v. Schmies,* 44 Cal.App.4th 38, 51 Cal.Rptr.2d 185, 190 (1996); *State v. Echols,* 919 S.W.2d 634 (Tenn.Crim.App.1995) (holding defendant criminally liable for the natural and probable consequences of his conduct); *State v. Ayers,* 478 N.W.2d 606, 608 (Iowa 1991) (stating that proximate cause concepts are same in criminal and civil cases). A policeman's violation of a constitutional norm is equivalent to an ordinary citizen's violation of the laws. Each provides a standard of conduct that is expected in our society. Accordingly, if it is foreseeable that a person will violate the criminal laws as a result of another's criminal negligence, *Gallimore,* 436 S.E.2d at 425, then it is equally foreseeable that a police officer may violate the constitution as a result of the negligence of another.

**4.** The court recognizes that *Daniels* was a constitutional tort case brought under 42 U.S.C. § 1983, whereas the instant case is brought under the Federal Tort Claims Act ("FTCA"). This does not change the fact, however, that the Court in *Daniels* acknowledged the possibility that a constitutional violation of a substantive amendment, such as the Fourth or Eighth Amendments, could be a foreseeable result of a defendant's negligence. *See Haygood v. Younger,* 769 F.2d 1350 (9th Cir.1985) (en banc) (holding jailers liable for violation of Eighth Amendment because they negligently calculated defendant's maximum prison term); *McClelland v. Facteau,* 610 F.2d 693, 696 (10th Cir.1979) (recognizing § 1983 cause of action for superior officer's negligence in training or supervision); *Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979) (holding that plaintiff stated proper cause of action under § 1983 by alleging that warden neglected duty to supervise and control prison guards); *Watson v. McGee,* 527 F.Supp. 234 (S.D.Ohio 1981) (holding that negligent maintenance of jail states § 1983 action when negligence led to fire and injury to detainees). The fact that plaintiff chose to bring the current action under the FTCA merely appears to be an acknowledgment that no constitutional violation occurred in this case.

cannot find at this early stage of the proceedings that the erroneous transmission was not a proximate cause of the shooting. Plaintiff argues that the transmission informed the Virginia Beach police that they were dealing with an individual who, to the best of their knowledge, had just "committed a crime involving the infliction or threatened infliction of serious physical harm." *Garner,* 471 U.S. at 11–12, 105 S.Ct. 1694. Further factual development will allow the court to determine the precise effect that this information had on the perception of the Virginia Beach police officers at the scene and determine if any other factors, not included in the complaint, may have also factored into the decision to use deadly force against Quagliato.

Finally, even if the government is correct that constitutionality is the outer limit of foreseeability in the tort context, it is not clear from the complaint that there was a constitutional violation in this case. The constitutional standard for the use of deadly force by police officers was established in *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In *Garner,* the Supreme Court held that if an officer

> has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11–12, 105 S.Ct. 1694. In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Court stated that courts must pay particular attention to the facts and circumstances of each case, particularly "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. The Court in *Graham* also stated that an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Numerous courts have interpreted *Graham* as requiring substantial deference to the on-scene judgments made by police officers. *Drewitt v. Pratt,* 999 F.2d 774, 780 (4th Cir.1993); *Smith v. Freland,* 954 F.2d 343, 347 (6th Cir.1992); *Ford v. Childers,* 855 F.2d 1271, 1276 n. 8 (7th Cir.1988) (en banc).[5] In addition, most courts limit the inquiry to the information known by the officer at the time of the shooting. *Sherrod v. Berry,* 856 F.2d 802, 805 (7th Cir.1988); *Ford,* 855 F.2d at 1275; *see Greenidge v. Ruffin,* 927 F.2d 789, 792 (4th Cir.1991) (applying *Graham, Sherrod* and *Ford* to limit relevant evidence to police officer's actions "immediately prior to the shooting").

At this early stage of the proceedings, where the court is limited to the allegations contained in the complaint and must accord every reasonable inference to the plaintiff as the non-moving party, the court cannot determine that the actions of the Virginia Beach police were unconstitutional. Not only must those actions be examined based on the information known to the Virginia Beach police at the moment that Quagliato was shot, but the police actions are accorded substantial deference because they involve split-second decision-making in potentially violent and dangerous situations.

---

**5.** *But see* Kathryn R. Urbonya, *Dangerous Misperceptions; Protecting Police Officers, Society, and the Fourth Amendment Right to Personal Security,* 22 Hastings Const. L.Q. 623, 653–58 (1995) (arguing that these courts give too much deference to police officers and, as a result, decide as matters of law issues that properly are jury questions).

On the current state of the record, it is undisputed that the Virginia Beach police had probable cause to believe that Quagliato had just shot or seriously wounded a fellow officer.[6] Armed with this knowledge, erroneous though it was, the police may have been especially predisposed to view any action taken by Quagliato as provocative. In this respect, the erroneous information transmitted by the Little Creek Base police acted as a prism through which Quagliato's actions were seen by the Virginia Beach police. Like a prism, that erroneous information altered the vision of those looking through it at Quagliato's actions. Without the erroneous information, it is entirely possible that the pursuit of Quagliato and the subsequent stop would have been viewed more routinely and without the sense of urgency that occurs when the police have knowledge that a suspect committed a violent crime, much less when the victim of that crime is a fellow law enforcement officer.

Given these facts and the analysis required by *Garner*, the court cannot find at this early juncture on the pleadings alone that the actions of the Virginia Beach police were unconstitutional under *Garner*. At the same time, the court does not find that the Virginia Beach police acted constitutionally. Contrary to the government's position,[7] such a determination is simply premature based on the sparse facts outlined in the complaint. Rather, more information is needed before such a fact specific determination can be made. Therefore, even taking the government's

argument as true, there is no basis for granting the motion to dismiss at this time, as all inferences must be drawn in favor of the non-moving party, i.e., the plaintiff.

**B. The Actions of the Virginia Beach Police Do Not Supersede Defendants' Liability**

The government next attempts to succeed with the argument that a superseding, intervening action relieved the Navy of liability. Under Virginia law, "the extraordinary manner in which harm occurs may prevent the primary actor's conduct from being the proximate cause of an event." *Banks v. City of Richmond,* 232 Va. 130, 348 S.E.2d 280, 283 (1986). Thus, even if the primary actor is the "but for" cause of an injury, an action that is so highly extraordinary as to be unforeseeable may serve to cut off legal causation. *Id.* at 283–84. Here, the government argues that the extraordinary, unforeseeable event relieving the Navy of liability was the unconstitutional action of the Virginia Beach police in shooting Quagliato. The government's argument, however, is premised on the assumption that the actions of the Virginia Beach police were unconstitutional. As discussed above, though, the facts alleged in plaintiff's complaint are susceptible of more than one inference and the court cannot at this juncture find that the Virginia Beach police officers acted unconstitutionally.

### III. Conclusion

Because more than one inference may be drawn from the facts alleged in the

---

6. Counsel for the government conceded as much at oral argument. However, counsel argued that while this information may have constituted sufficient probable cause to justify Quagliato's arrest, it did not justify his shooting by the Virginia Beach police. Though that assertion may be true, it does not disturb the fact that an important portion of the *Garner* standard is satisfied by such a concession because, if the officers had probable cause to arrest Quagliato for shooting an officer, they certainly had "probable cause to believe that [Quagliato] committed a crime involving the infliction ... of serious physical harm." *Garner,* 471 U.S. at 11, 105 S.Ct. 1694.

7. The government's argument that the actions of the Virginia Beach police were unconstitutional is based exclusively on two words in plaintiff's complaint. In paragraph eighteen of the complaint, plaintiff states that the Virginia Beach police shot Quagliato "without provocation." Here again, however, the phrase is susceptible of more than one inference and, without further factual development, the court is not inclined to rely on two words in plaintiff's complaint to find a constitutional violation, even if constitutionality were relevant in this proximate cause inquiry.

complaint,[8] the court cannot find as a matter of law that the erroneous radio transmission by Little Creek Base police was not a proximate cause of Quagliato's death. As a result, the government's motion to dismiss is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for the parties.

It is so **ORDERED**.

---

8. The court emphasizes that the current decision is made in the context of a motion to dismiss, which is based only on the allegations made in plaintiff's complaint, *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683, and accepting the factual allegations in the complaint as true. *Hishon*, 467 U.S. at 73, 104 S.Ct. 2229. Moreover, the only issue raised by the government in this motion is proximate causation, further narrowing the scope of the court's ruling. This ruling does not preclude proximate cause, or any other issue, such as contributory negligence, from being raised after discovery when a more complete factual picture is available to the court.