STATE of Iowa, Appellee,

v.

Joseph Allen SUTTON, Appellant.

No. 99–1245.

Supreme Court of Iowa.

Nov. 15, 2001.

Kent A. Simmons, Davenport, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, William E. Davis, County Attorney, and

Jerald Feuerbach and Robert Cusack, Assistant County Attorneys, for appellee.

NEUMAN, Justice.

Numerous legal challenges are raised in this appeal by Joseph Sutton from his conviction for aiding and abetting vehicular homicide by reckless driving. But the decisive issue is whether the facts fail to support the conviction as a matter of law. We conclude they do. We therefore vacate a contrary court of appeals decision and reverse the judgment of the district court.

## I. Background Facts and Legal Proceedings.

On a sunny Saturday morning in an older residential neighborhood of Davenport, three-year-old Steven Choate played in the front yard of a friend's home. His grandparents were hosting a garage sale across the street. In an evident attempt to rejoin his family, little Steven suddenly ran into the street. Tragically, he was struck and killed by a car driven by fifteen-year-old Joseph "Junior" Butler. Defendant Joseph Sutton, who is seventeen years old, was a passenger in the Butler vehicle.

Wilkes Avenue, where the collision occurred, is a two-lane residential street with parking allowed on both sides and a posted speed limit of twenty-five miles per hour. An eyewitness and two accident reconstruction experts estimated that Butler's pre-impact speed was twenty-seven miles per hour. The eyewitness, Jim Willert, had just passed the Butler vehicle traveling in the opposite direction. Willert drove a van towing a trailer with a stock car on it. As he met the Butler vehicle, Willert pulled over to the curb behind one of two parked cars because there was limited room to pass. Willert's van and trailer were then in a "V" position, between the

two parked cars, with the front of the van edging slightly over the middle of the street.

Another passenger in the Butler vehicle, thirteen-year-old Markey Glenn, testified that Butler had to swerve slightly to miss the Willert vehicle, which Glenn described as coming right at them. This explains Willert's belief that the Butler vehicle went somewhat up on the opposite curb and slowed down before resuming speed and passing him. Glenn also testified that upon executing this maneuver, Sutton told Butler "good job" and the two exchanged a "high five." It was reportedly just after this congratulatory gesture that Butler first saw the child in his path. He applied his brakes but failed to stop in time to avoid hitting the child. Willert observed the collision in his rear-view mirror.

Willert assisted Butler in retrieving the child from the undercarriage of the vehicle. Emergency help was summoned. Sutton and Glenn, meanwhile, panicked and fled on foot.

The State charged Sutton with aiding and abetting vehicular homicide by reckless driving in violation of Iowa Code section 707.6A(2)(a) (Supp.1997). The case proceeded to jury trial. During jury selection, Sutton mounted a *Batson* challenge to the State's peremptory strike of the only African–American on the jury panel. *See generally Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After hearing argument on the point, the court rejected the challenge. The court likewise rejected motions by Sutton for judgment of acquittal based on alleged insufficiency of the evidence to support the charged offense.

The jury returned a verdict finding Sutton guilty as charged. After failing to prevail on a motion for new trial, Sutton appealed. We transferred the case to the

court of appeals. That court, with one judge dissenting, affirmed the denial of Sutton's motions for judgment of acquittal but reversed and remanded with directions to the court to apply the correct weight-of-the-evidence standard to Sutton's motion for new trial. *See State v. Ellis*, 578 N.W.2d 655, 658–59 (Iowa 1998). The dissent believed the district court failed to properly instruct the jury on proximate cause and that counsel's failure to preserve error on this crucial issue warranted preservation of the claim for postconviction relief. The court also rejected Sutton's constitutional challenge to the imposition of $150,000 in victim restitution under Iowa Code section 910.3B(1) (Supp.1997).

The case is now before us on Sutton's petition for further review. Additional facts will be detailed as they pertain to the issues on review.

## II. Issue on Appeal/Scope of Review.

As we noted at the outset, Sutton mounts several legal challenges to his conviction, including the court's denial of his *Batson* challenge and a forceful claim that error by trial counsel led the court to give the jury an inadequate proximate cause instruction. We are convinced, however, that resolution of the appeal turns on the fundamental question of whether, as a matter of law, the State failed to tender sufficient proof of reckless conduct—or aiding and abetting that conduct—to support the charge against Sutton.

 We are guided by well-established rules as we consider Sutton's sufficiency-of-the-evidence challenge:

The district court's finding of guilt is binding upon us unless we find there was not substantial evidence in the record to support such a finding. In determining whether there was substantial evidence, we view the record evidence in the light most favorable to the State.

Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt.

A reviewing court cannot make a substantial evidence determination if it considers only the evidence supporting guilt. This is so because a rational fact finder cannot render a verdict without taking into consideration *all* the record evidence. So in determining whether there is substantial evidence, we must consider all the record evidence, not just the evidence supporting guilt.

*State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993) (citations omitted).

## III. Applicable Law.

Iowa Code section 707.6A(2)(a) sets forth the reckless driving alternative to the crime of homicide by vehicle. The statute provides:

2. A person commits a class "C" felony when the person unintentionally causes the death of another by any of the following means:

a. Driving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property, in violation of section 321.277.

Iowa Code § 707.6A(2)(a). The language of the reckless driving statute, section 321.277, echoes section 707.6A(2)(a), defining the crime as "driv[ing] any vehicle in such manner as to indicate either a willful or a wanton disregard for the safety of persons or property." Reckless driving is punishable as a simple misdemeanor. Iowa Code § 321.277 (1997).

 The burden rests upon the State to prove recklessness. *State v. Cox*, 500 N.W.2d 23, 26 (Iowa 1993). In *Cox*, this court made plain that, even when a death occurs, violation of a rule of the road, by itself, does not elevate "a simple misde-

meanor to a class 'C' felony." *Id.* Thus proof that a motorist failed to yield at a stop sign, without accompanying evidence of speeding or erratic driving, was insufficient as a matter of law to establish the recklessness necessary to support a conviction for vehicular homicide. *Id.* Relying on *Cox*, the court held in *State v. Klatt*, 544 N.W.2d 461, 463 (Iowa Ct.App.1995), that proof of improper passing, without more, could not sustain a vehicular homicide conviction. *Klatt* involved a motorist who was attempting to pass two semi-trailer trucks when he collided with an oncoming vehicle, killing the driver. Although the maneuver occurred in a no-passing zone, the court held that absent proof of excessive speed or other conscious disregard for the safety of others, the State failed in its burden of proving recklessness. *Klatt*, 544 N.W.2d at 463.

■ These cases, and others addressing conduct resulting in the unintentional death of another, recognize that attaching criminal culpability to an act requires more than proof of accidental or negligent behavior. "[F]or recklessness to exist," this court held in *State v. Torres*,

> the act must be fraught with a high degree of danger. In addition the danger must be so obvious from the facts that the actor knows or should reasonably foresee that harm will probably— that is, more likely than not—flow from the act.

495 N.W.2d at 681. In other words, a person acts recklessly when the person's actions are not merely unreasonable but "highly" unreasonable; not merely a departure from ordinary care but an "extreme" departure. *See id.* (quoting William L. Prosser, *Handbook of the Law of Torts* § 34, at 185 (4th ed.1971)).

Several cases involving prosecutions for vehicular homicide demonstrate behavior deemed highly unreasonable and, there-

fore, reckless. In *State v. Conyers*, 506 N.W.2d 442, 443 (Iowa 1993), the facts revealed that.defendant drove ten miles an hour over the posted speed limit in a school zone, traveling through a red light and into a marked crosswalk where he struck and killed a nine-year-old on her way home from school. The facts further revealed that three out of the four brakes on Conyers' truck were "completely deteriorated and inoperable." *Conyers*, 506 N.W.2d at 443. Conyers knew of the brakes' defective condition and, in fact, had been warned that very day not to drive the vehicle. *Id.* at 444. This court held that the defendant's disregard for this danger, combined with driving at an excessive speed in a school zone, demonstrated the level of recklessness necessary to support a conviction for vehicular homicide. *Id.* at 445.

In a more recent case, this court distinguished *Klatt* and *Cox*, upholding a conviction for vehicular homicide where, in a deadly move, the defendant—driving nearly *ninety* miles per hour in a no-passing zone—forced an oncoming motorist off the road and into the path of another vehicle. *State v. Abbas*, 561 N.W.2d 72, 74 (Iowa 1997). Likewise, in *State v. Travis*, 497 N.W.2d 905, 907 (Iowa Ct.App.1993), our court of appeals found the requisite recklessness established in a record that showed defendant riding his motorcycle at excessive speeds "on curbs, sidewalks and lawns, and lifting his motorcycle off the front wheel while riding." The defendant then put the vehicle in the hands of an inexperienced and underage driver who, without instruction about how to stop, eventually struck and killed a six-year-old playing nearby. *Travis*, 497 N.W.2d at 907.

■ Consistent with the definition of recklessness articulated in *Torres*, the convictions upheld in *Conyers, Abbas* and *Tra-*

*vis* rested on proof of *highly* unreasonable conduct in *forseeably* dangerous situations. We highlight this observation because in *Conyers* this court stated that "a person recklessly drives when they consciously or intentionally drive and they know or should know that by driving they create *an unreasonable risk of harm* to others." *Conyers*, 506 N.W.2d at 444 (emphasis added); *accord Abbas*, 561 N.W.2d at 74. To the extent the standard announced in *Conyers* might be interpreted as requiring the State to prove no more than a violation of the reasonable person standard necessary to establish negligence, we hereby take this opportunity to clarify it. To prove recklessness sufficient to support a conviction for vehicular homicide under section 707.6A(2)(a), the State must prove that the defendant engaged in conduct "fraught with a high degree of danger," conduct so obviously dangerous that the defendant knew or should have forseen that harm would flow from it. *Torres*, 495 N.W.2d at 681.

█ To sustain a conviction based on the theory of aiding and abetting, the State must tender substantial proof that the accused "assented to or lent countenance and approval to the criminal act either by active participation or by some manner encouraging it prior to or at the time of its commission." *State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000); *see Travis*, 497 N.W.2d at 908.

## IV. Analysis.

The question is whether Butler's driving on Wilkes Avenue was *highly* unreasonable or such an *extreme* departure from ordinary care as to constitute not just negligence but recklessness. The State's expert conceded that driving twenty-seven miles per hour in a twenty-five mile per hour zone could not fairly be described as reckless. So the State attempted to portray Butler's minor speeding infraction as not an isolated act but part of a pattern of reckless driving engaged in by the trio on the morning of the accident. The drivers were underaged, unlicensed and inexperienced, the State argued, and the car they were driving had faulty brakes. Additionally, although not corroborated by any eyewitness testimony (including passenger Glenn), the State surmised that Butler must have failed to stop at a stop sign in the preceding block in order to achieve twenty-seven miles per hour just before braking for the child.

We think testimony by the State's expert puts the collision in perspective. An average driver will perceive and react to a hazard in one-and-a-half seconds. A car moving at a speed of twenty-seven miles per hour travels forty feet per second. Butler's vehicle left fifty-six feet of skid marks, suggesting a better-than-average reaction time to a crisis situation. Sadly, Butler's reaction time was not fast enough to prevent the collision that took Steven Choate's life. So the State argues that if the car's brakes had been better, Butler would have been able to stop sooner. Key to this assertion, however, would be proof that Butler—and Sutton—knew of the brakes' condition and drove heedlessly despite the hazard. *See Conyers*, 506 N.W.2d at 445 (upholding conviction where defendant admitted knowledge of dangerously defective brakes yet drove ten miles per hour over speed limit in school zone, striking schoolgirl); *Travis*, 497 N.W.2d at 908 (aiding and abetting reckless driving). The vehicle's owner, called by the State, conceded the brakes were "mushy" but not sufficiently hazardous to prevent him from driving the car. Thirteen-year-old Markey Glenn testified that during his turn at the wheel, the brakes "sort of gave out" at one intersection so that he "almost" did not stop. But he went on to state that the

incident gave him no further concern. The record contains no proof that he mentioned it to Butler or Sutton, or that either one of them had any knowledge whatsoever that the brakes were in such obviously poor condition that harm would *probably* flow from driving the car. *See Torres*, 495 N.W.2d at 681.

■ In making our assessment of the sufficiency of the evidence, we are obliged to consider *all* the evidence, not just the evidence supporting the verdict. *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980); *accord Cox*, 500 N.W.2d at 24. It is apparent from viewing the photographic evidence in this case that Willert's van and stock car trailer obscured Butler's view of the playing children Willert had just passed. Willert understood the hazard ahead; the record contains no proof that Butler was aware of it. Considered in retrospect, Butler's actions were arguably negligent. The circumstances may have counseled driving lower than the posted speed limit. But neither on their own, nor when measured against our prior decisions, do the facts before us spell recklessness.

The fact that the defendant before us was not the driver of the vehicle, but a passenger, only reinforces our conclusion that the judgment against him cannot stand. Accordingly, we reverse the conviction and sentence entered against Joseph Sutton for aiding and abetting vehicular homicide.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED.**

All justices concur except CADY and LARSON, JJ., who dissent. SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

---

* Senior Judge assigned by order pursuant to

CADY, Justice (dissenting).

I respectfully dissent.

The majority has properly stated our standard of review, yet fails to adhere to the standard in its review of this case.

This case has two layers of conduct at issue. The first is the conduct of the driver. The second is the conduct of the passenger. The legal standard applicable to each type of conduct is well settled. The conduct of the driver must be reckless. This means there must be evidence the driver knew or should have reasonably foreseen that harm would probably flow from his actions. *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993). The passenger must have assented to the recklessness by his active participation or encouragement. *State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000).

The majority determines the record failed to reveal substantial evidence to support a finding of recklessness by the driver. Yet, its analysis reveals this was done only by emphasizing evidence that tended to minimize the driver's conduct and by drawing inferences from the evidence contrary to those that would support the verdict of the jury. *See Torres*, 495 N.W.2d at 681 (must consider all the evidence, not just that supporting defendant's guilt). This is contrary to our appellate standard of review. An appellate court must not review a case as a jury, but must review the verdict reached by the jury. In performing this task, it must consider the evidence in a light most favorable to the State, not advocate for the defense. *See id.*

The majority first concludes the expert testimony concerning the skid marks left by the vehicle on the pavement of the street revealed the youthful driver in this

Iowa Code section 602.9206 (2001).

case was abnormally quick and attentive to react to the crisis situation. It then uses this conclusion to defeat the State's argument that the youthfulness, inexperience, and unlicensed status of the driver were factors to support recklessness.

This logic is not only a *non sequitur*, but the premise lacks foundation and is a misstatement to the record. The skid mark evidence in this case was unrelated to the skill of the driver in reacting to the situation. Instead, it simply revealed the vehicle probably came to a stop 116 feet from the point at which the driver made the decision to stop the vehicle. If the point of impact was known, it would also show the distance between the vehicle and the victim when the driver realized the need to brake the vehicle. ·

Contrary to the majority, no expert in this case rendered an opinion about the skill of the driver, but only opined about the distance between the vehicle and the victim at the moment the driver saw the need to apply the brakes. The defendant had argued at trial that there was not enough time to stop the vehicle because the victim ran into the path of the vehicle. This conclusion was based on a claim that the point of impact occurred ten feet into the skid. The State argued the point of impact occurred at the very end of the skid, implying that a reasonably safe driver would have had enough time to stop the car without striking the victim. The majority not only fails to consider this evidence in a light most favorable to the State, as it is required, but draws an inference favorable to the defendant that is incorrect.

The majority next turns to the evidence of the poor condition of the brakes of the vehicle and concludes this evidence cannot be imputed to the driver because there was no direct evidence he knew the brakes were faulty. Again, the majority fails to consider the evidence in the case in a light most favorable to the State. There was ample circumstantial evidence in the record that the driver knew the brakes were not in good condition. The owner of the vehicle testified the brakes were "mushy." There was evidence the brake warning light on the dashboard of the vehicle was illuminated. Furthermore, even the thirteen-year-old boy who also operated the vehicle on that fateful morning, Markey Glenn, could tell from driving the vehicle that the brakes were not in good condition. Clearly, the inference the State was entitled to receive and that the jury could have drawn is that any driver operating the vehicle would have realized the brakes did not work properly.

The majority then turns to the evidence that the stock car trailer obscured the driver's full view of the street ahead, as well as the children playing near the street in the obscured area. It then uses this evidence to conclude the driver could not have been reckless because he had no knowledge of the young child ahead. However, there is another important conclusion that can be drawn that is favorable to the State. A reasonable driver would stop or at least slow down when the vision of the road ahead is obscured by an obstruction on the road. The inference the majority should draw in this case is that the driver failed to slow to a safe speed when his vision became obscured, and this failure is a factor to support recklessness. The vehicle in this case was not being driven in an area where the presence of children in or near the street would not be expected. It was in a residential area. It was a sunny, fall Saturday morning. It was a time for drivers to expect people to be in the area. The failure to reduce the speed of the vehicle or to stop the vehicle when the driver's vision ahead is obscured is a clear factor that supports recklessness.

It showed a clear lack of care and concern for what might be in the obscured area. Moreover, it certainly cannot be used to disprove recklessness.

Finally, the majority minimizes the evidence offered by the State that the driver failed to stop at an intersection, as required, just prior to the collision. The majority downplays this evidence because it was not supported by an eyewitness. Again, the majority violates our standard of review. Tests by police after the incident revealed it was not possible to reach the speed of the vehicle in this case from a stopped position at the stop sign. This was circumstantial evidence the driver failed to stop that we must accept. Additionally, the majority consistently refers to the speed of the vehicle at twenty-seven miles per hour. The State's experts, however, placed the speed of the vehicle in a range between twenty-nine and thirty-two miles per hour seconds before the accident.

In my view, substantial evidence supports recklessness, and we have done a disservice to our jury system by reversing the conviction. There was evidence the driver should have reasonably foreseen some harm was likely by operating a vehicle, in a residential area at the time children would be expected to be playing outside, at a speed up to seven miles over the speed limit, and when the driver's vision of the street ahead and adjoining yards was substantially obstructed. Additionally, the vehicle had noticeably faulty brakes and was driven by a youthful, inexperienced, untrained, unlicensed operator who had just ran a stop sign and was celebrating the successful passage of an oncoming truck and trailer, with a maneuver that required him to jump the curb, by exchanging high-five's with the passenger. As the driver and the passenger engaged in their reckless and heedless celebration,

the vehicle blindly and contemptuously continued to speed into the path of little Steven Choate. This was reckless conduct by the driver, and Sutton is responsible for it as an aider and abettor. Sutton was the only experienced driver in the vehicle. Instead of discouraging such reckless conduct, he commended the driver by telling him he was doing a "good job."

The majority is correct that a violation of the rule of the road, by itself, does not constitute recklessness. *See State v. Cox*, 500 N.W.2d 23, 26 (Iowa 1993). Clearly, we cannot compartmentalize reckless driving into categories of violations of rules of the road. This is because reckless driving is actually a state of mind. Thus, we look beyond the particular violation of the rule of the road involved in the case to consider whether the overall conduct of the driver would support a reckless state of mind—a mind that reveals actual or constructive knowledge that the operation of the vehicle creates an unreasonable risk of harm for others. *See Torres*, 495 N.W.2d at 681. Thus, in *Cox*, for example, the running of a stop sign did not constitute reckless driving because there was no additional evidence the driver was speeding or operating the vehicle in an erratic manner. *Cox*, 500 N.W.2d at 26.

The driver in this case was not reckless simply because he was speeding or because his conduct resulted in the death of another. Instead, he was reckless because he was driving erratically and carelessly, just as the driver in *Cox* would have been reckless if the stop sign violation would have been accompanied by erratic driving. This case is not a case of misjudgment or inadvertence by the driver. It is a case of horseplay accompanied by an uncaring attitude and careless frame of mind. The behavior displayed was "fraught with a high degree of danger" and was clearly enough to show the driver should have

known that the operation of the vehicle created an unreasonable risk of harm. *See Torres,* 495 N.W.2d at 681. We are obligated by our standard of review to affirm the verdict of the jury.

LARSON, J., joins this dissent.