# IN THE COURT OF APPEALS OF IOWA

No. 17-0914
Filed August 15, 2018

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**FERNANDO LOPEZ-AGUILAR,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Fernando Lopez-Aguilar appeals his convictions arising out of a fatal traffic accident. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Following trial by jury, Fernando Lopez-Aguilar was convicted of multiple offenses arising out of a fatal car crash. He was convicted of reckless driving, in violation of Iowa Code section 321.277 (2016); involuntary manslaughter, in violation of Iowa Code section 707.5; serious injury by reckless driving, in violation of 707.6A(4); two counts of neglect of a dependent person, in violation of Iowa Code section 726.3; and two counts of child endangerment, in violation of Iowa Code section 726.6. On appeal, Lopez-Aguilar contends the district court abused its discretion in denying his motion for mistrial. He also contends there was insufficient evidence establishing recklessness. Finally, he raises several claims of ineffective assistance of trial counsel.

I.

On the afternoon of September 8, 2016, Lopez-Aguilar, an unlicensed motorist, was driving on an unfamiliar-to-him stretch of Bell Avenue in Des Moines. Also in the vehicle were Lopez-Aguilar's girlfriend, Frances Jordan, and two children. This particular stretch of Bell Avenue was in a very hilly, residential area. The afternoon sun was shining into Lopez-Aguilar's eyes. The posted speed limit was twenty-five miles per hour. Lopez-Aguilar was exceeding the speed limit, reaching speeds of forty-eight miles per hour. Jordan asked Lopez-Aguilar to slow down, but he did not do so.

While driving westbound on Bell Avenue, Lopez-Aguilar ran through a stop sign shortly after cresting a hill. As Lopez-Aguilar's car traveled through the intersection, it struck the rear passenger-side wheel of a truck traveling through the intersection northbound on Southeast Sixth Avenue. The impact dislodged the

truck's rear axle. The force of impact launched the truck up into the air in a spin. The back of the spinning, airborne truck crashed into the front end and windshield of another vehicle traveling southbound on Southeast Sixth Avenue. After the truck collided with the second vehicle, the truck reversed rotation and came to rest perpendicular to the second vehicle. There were three occupants in the southbound vehicle, Phann Sos and his two granddaughters. Sos suffered serious injuries as a result of the accident. One of the granddaughters, L.P., died as a result of her injuries.

Below is an exhibit showing the accident site.



The exhibit shows Lopez-Aguilar's vehicle continued through the intersection after impact and came to rest in the side yard of a home near the intersection. The truck is facing westbound, perpendicular to Sos's vehicle.

Officer David Olsen and other police officers arrived at the scene and commenced an investigation. Lopez-Aguilar stated he was traveling approximately thirty or thirty-five miles per hour. He stated he applied his brakes before entering the intersection but his brakes failed to engage. After this initial exchange, Officer Don Ouimet took Lopez-Aguilar to a police station for an interview. Lopez-Aguilar repeated his statements regarding his speed and the brake malfunction. He added he did not see the stop sign until he was right on top of it. During the interview, Officer Ouimet made a comment to Lopez-Aguilar regarding his choice of route, stating Lopez-Aguilar chose a less-traveled route to get to his destination to avoid detection as an unlicensed driver. Ouimet concluded the interview by obtaining Lopez-Aguilar's contact information and reviewing Lopez-Aguilar's social security card. The interview was recorded.

During the course of the investigation it became apparent that, contrary to Lopez-Aguilar's initial claims, the brakes on his vehicle were working at the time of the accident. The car's airbag control module provided detailed data regarding the speed of the vehicle just prior to the accident. The data showed Lopez-Aguilar was traveling forty-seven miles per hour with the accelerator fully depressed five seconds prior to impact, forty-eight miles per hour with the accelerator partially depressed four seconds prior to impact, forty-seven miles per hour without the accelerator depressed three seconds prior to impact, forty-six miles per hour with the brake pedal depressed two seconds prior to impact, and forty-two miles per hour with the brake pedal depressed one second prior to impact. Using this data, Officer Jacob Hedlund reenacted the situation by driving along Lopez-Aguilar's route at the same speeds. During the reenactment, Officer Hedlund was able to

stop well before entering the intersection at issue. The reenactment was recorded on the police cruiser's dashcam. Officer Hedlund concluded "[I]n that area with the narrow roadway, the hilly terrain, and the speeds at which the defendant" was driving, the defendant was "unsafe" and "dangerous."

The State charged Lopez-Aguilar with seven counts: Count I, homicide by reckless driving arising out of the death of L.P.; Count II, involuntary manslaughter arising out of the death of L.P.; Count III, serious injury by reckless driving arising out of the injury to Sos; Count IV, neglect of a dependent person arising out of the danger posed to the first child in Lopez-Aguilar's vehicle; Count V, child endangerment arising out of the danger posed to the same child; Count VI, neglect of a dependent person arising out of the danger posed to the second child in Lopez-Aguilar's vehicle; and Count VII, child endangerment arising out of the danger posed to the same child.

The matter came on for trial. During trial, Officer Olsen testified regarding his investigation. He testified: "I approached him. I asked him if he was driving, and he said yes. And then I asked him if he had a driver's license?" Before Officer Olsen could continue with his testimony regarding Lopez-Aguilar's response to the question, defense counsel asked to approach the bench. The jury was excused from the courtroom, and the lawyers made a record on the driver's license issue. Defense counsel stated the evidence was not relevant to the charges in the absence of evidence showing Lopez-Aguilar had no driving experience or driving education. The district court agreed and held evidence regarding Lopez-Aguilar's lack of a driver's license would not be admissible. The district court instructed the prosecutor to "make the accommodations to the video accordingly," referring to the

video recording of Officer Ouimet's interview of Lopez-Aguilar. The jury returned to the courtroom, and the prosecutor continued to question Officer Olsen without any further reference to the status of Lopez-Aguilar's driver's license.

The issue of Lopez-Aguilar's license came up again later in the trial. The State published Officer Ouimet's interview with Lopez-Aguilar. During the course of the interview, as noted above, Officer Ouimet opined to Lopez-Aguilar that Lopez-Aguilar avoided the main streets to "avoid seeing people" because Lopez-Aguilar did not have a driver's license. The parties agreed the statement inadvertently was not redacted from the video prior to publication to the jury. Nonetheless, defense counsel moved for mistrial. Defense counsel argued Officer Ouimet's statement was prejudicial because it allowed the jury to speculate on why Lopez-Aguilar did not have a driver's license, including speculation regarding prior bad acts and speculation regarding Lopez-Aguilar's immigration status. The court denied the motion for mistrial:

> Now, both sides had this video, and both sides had the transcript, and this other section wasn't brought up in the hearing yesterday. So it's on both of you a little bit. And I understand it's, you know, it's a 30-minute interview and we're in the middle of trial, and there's lots of things going on. So I'm not saying there's really —I'm not blaming anyone, because I can completely understand, you know, how this wasn't, you know, picked up on by both sides, but—and I heard it. I certainly don't think we're going to interview the jurors, because, you know, it is in evidence. That would only emphasize it.
> But I kind of see it at this point as a throw-away line. It was in the middle of the interview. It was one very small reference, and in and of itself, I don't think it creates grounds for a mistrial in light of the week-long evidence that we're going to have by the time this case is submitted. I mean, this case is going to focus on the speed and the ability or lack thereof to stop this vehicle as it went into this intersection. I mean, that's all we've talked about. And I don't think this two-second, or whatever it might have been, reference to not

having a DL by an officer—wasn't acknowledged by the defendant—is sufficient enough to grant a mistrial.

Now, I would be willing to grant a curative instruction. I would be willing to do that tomorrow when the jury gets back. I would be willing to put it in the instructions.

But, [defense counsel], I guess you're going to want to think about that, because it creates the same concern of emphasizing the testimony. And I know we talk about that in a lot of cases. To be honest, I think the best course would be to simply move on and, you know, tell the State they're not going to argue the point in closing arguments.

No curative instruction was provided to the jury. And the issue did not arise again during the course of trial.

The jury convicted Lopez-Aguilar as charged on Counts II through VII. With respect to Count I, the jury acquitted Lopez-Aguilar of homicide by reckless driving but convicted him of the lesser-included offense of reckless driving. Lopez-Aguilar timely filed this appeal.

II.

Lopez-Aguilar contends the district court should have granted a mistrial due to the publication of the interview that referenced the status of his driver's license and due to Officer Olsen's testimony that he asked Lopez-Aguilar to see his driver's license. According to Lopez-Aguilar, the reference to his lack of a driver's license in the police interview constituted prior bad acts evidence and implicated his immigration status. He also claims Officer Olsen's testimony that he questioned Lopez-Aguilar about his driver's license compounded the prejudice.

We begin our analysis by noting Lopez-Aguilar failed to preserve error with respect to his challenge to Officer Olsen's testimony. The officer testified he asked Lopez-Aguilar whether he had a driver's license while investigating the accident. Upon hearing Officer Olsen's testimony, defense counsel interrupted and

requested a conference outside the presence of the jury. In that conference, the district court agreed testimony regarding Lopez-Aguilar's license was not relevant. Olsen continued to testify without further discussing the issue. At no point did counsel move for a mistrial with respect to this testimony. We thus properly analyze this claim within the framework of a claim of ineffective assistance of counsel. In this framework, Lopez-Aguilar must show trial counsel failed to perform an essential duty and prejudice resulted. *See State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015). If he fails to show either, he cannot prevail. *Id.* Because Officer Olsen never testified regarding Lopez-Aguilar's response to his question, we conclude Lopez-Aguilar cannot show constitutional prejudice. Here, the jury only heard that Officer Olsen asked Lopez-Aguilar if he had a driver's license. He did not testify regarding Lopez-Aguilar's license status. The fact that Officer Olsen asked to see a motorist's driver's license following an accident is an unsurprising request. There was no prejudice here.

Regardless, even if the defendant had preserved error, and even if we were to consider Officer Olsen's testimony in conjunction with the publication of Officer Ouimet's interview with Lopez-Aguilar, the defendant is not entitled to any relief. We review a district court's denial of a motion for mistrial for an abuse of discretion. *See State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006). "When assessing a district court's decision for abuse of discretion, we only reverse if the district court's decision rested on grounds or reasons that were clearly untenable or clearly unreasonable." *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017). "Grounds or reasons are untenable if they are based on an erroneous application of the law or

not supported by substantial evidence." *Id.* (altered for readability).[1] "A court is found to have abused its discretion only when defendant shows prejudice which prevents him from having a fair trial." *State v. Callender*, 444 N.W.2d 768, 770 (Iowa Ct. App. 1989).

The challenged evidence did not interfere with Lopez-Aguilar's right to a fair trial. The challenged evidence was insignificant given the length of the trial and scope of the evidence. Trial in this matter lasted five days. Twenty witnesses testified, including expert witnesses. The foci of the trial were the driving conditions, the condition of the defendant's vehicle, specifically the brakes, the defendant's driving conduct, and the injuries to the victims. In contrast, the interview was twenty-nine minutes long, and Officer Ouimet's single statement was but a few seconds of the interview. The district court aptly characterized the reference as "a throw-away line." Similarly, Officer Olsen's testimony that he asked for a license was a single statement during the course of a lengthy trial.

In addition, the evidence was not unfairly or unduly prejudicial. With respect to Officer Olsen's testimony, Officer Olsen only testified he asked for a driver's license. He never testified the defendant did not possess one. The officer's request for Lopez-Aguilar's license at the scene of the accident is unsurprising. Indeed, it would be surprising if the officer did not ask to see Lopez-Aguilar's driver's license. It is speculative, at best, to contend the jury would infer anything

---

[1] Our court and others recently began using the parenthetical "cleaned up" to indicate the omission of internal quotation marks, alterations, and citations in quotations to improve readability. *See In re S.B.*, No. 18-0891, 2018 WL 3471619, at *3 (Iowa Ct. App. July 18, 2018); *see also United States v. Steward*, 800 F.3d 983, 986 n.3 (8th Cir. 2018); Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (Fall 2017). This opinion will use the parenthetical "altered for readability" for the same purpose.

untoward from the fact Officer Olsen asked an unsurprising question during the course of the investigation. With respect to the video, the jury heard Officer Ouimet's single statement that Lopez-Aguilar lacked a driver's license. We do not think the defendant's contention—that the jury thus necessarily speculated Lopez-Aguilar had committed prior bad acts or was an undocumented immigrant—is well-founded. In particular, the defendant responded to Officer Ouimet's statement and explained why he drove on the particular route. In addition, Lopez-Aguilar's concern the jury speculated about his immigration status is unconvincing given that the video also showed Lopez-Aguilar provide Officer Ouimet with a social security card and given that Lopez-Aguilar testified he had been raised in Perry, Iowa, since he was three years old. Finally, we note the jury acquitted Lopez-Aguilar of committing homicide by reckless driving. This undercuts his claim of jury bias.

The district court was in the best position to rule on the defendant's motion for mistrial. In denying the motion, the district court considered the inconsequential nature of the challenged evidence when compared to the entirety of the evidence presented. The district court also was able to observe and determine what impact, if any, the challenged evidence had on the jury. The district court explained its reasoning on the record, and we can find no abuse of its considerable discretion in denying the motion for mistrial. *See State v. Frei*, 831 N.W.2d 70, 80 (Iowa 2013) (noting the district court is best suited to gauge the impact of alleged misconduct), *overruled on other grounds by Alcala v. Marriott Intern., Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016).

III.

In his next claim of error, Lopez-Aguilar argues there is insufficient evidence of recklessness necessary to support any of the convictions. "Sufficiency of evidence claims are reviewed for a correction of errors at law." *State v. Standford*, 814 N.W.2d 611, 615 (Iowa 2012). We are bound to uphold a conviction if supported by substantial evidence. *See State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). "Evidence is considered substantial if, viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.*

Contrary to Lopez-Aguilar's claim, we first note that recklessness is not an element of all of the challenged offenses. Where, as here, the relevant jury instructions were submitted without objection, they become the law of the case for determining the sufficiency of the evidence. *See In re Estate of Workman*, 903 N.W.2d 170, 175 (Iowa 2017) (noting jury instructions become the law of the case). As instructed in this case, the jury was required to find the defendant was reckless to find him guilty of reckless driving, involuntary manslaughter, and serious injury by reckless driving. Lopez-Aguilar contends the other convictions have recklessness-like elements or could not be proved in the absence of evidence of recklessness. We disagree. To prove the defendant guilty of neglect of a dependent person, as instructed here, the State was required to prove the defendant exposed the children "to a hazard or danger against which she could not protect herself." To prove the defendant guilty of child endangerment, as instructed here, the State was required to prove the defendant "knowingly created a substantial risk [to the child's] physical, mental, or emotional health or safety."

Proof of recklessness is not necessarily required to prove either of these propositions. We need not plumb the depths of the issue here, however, because we conclude there is substantial evidence supporting a finding of recklessness sufficient to sustain each of the convictions.

We first address the defendant's challenge to his convictions for reckless driving and causing serious injury by reckless driving. The State was required to prove the defendant "drove a motor vehicle in a reckless manner." Jury instruction seventeen defined recklessness:

> A person is "reckless" or acts "recklessly" when he willfully disregards the safety of persons or property. It is more than a lack of reasonable care which may cause unintentional injury. Recklessness is conduct which is consciously done with willful disregard of the consequences. For recklessness to exist, the act must be highly dangerous. In addition, the danger must be so obvious that the actor knows or should reasonably foresee that harm will more likely than not result from the act. Though recklessness is willful, it is not intentional in the sense that harm is intended to result.

And jury instruction eighteen provided additional guidance:

> A single violation of a rule of the road, by itself, does not ordinarily meet the definition of reckless driving, even when a death occurs. The State may prove recklessness based on a showing that the Defendant violated multiple rules of the road at one time, or violated a rule of the road with accompanying evidence of erratic driving, but only if the act was fraught with a high degree of danger. The State must show that the Defendant's driving was so obviously dangerous that he knew or should have foreseen that harm would flow from it.

Jury instruction twenty-one defined "public offenses" or "rules of the road":

> - **Speed, generally.** Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other conditions then existing.
> - **Failing to stop in a safe and assured clear distance**. No person shall drive any vehicle upon a highway at a speed

greater than will permit the person to bring it to a stop with the assured clear distance ahead.

- **Failing to obey traffic control device.** The driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at the first opportunity at either the clearly marked stop line or before entering the crosswalk or before entering the intersection or at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. Before proceeding, the driver shall yield the right-of-way to any vehicle on the intersecting roadway which has entered the intersection or which is approaching so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection.
- **Speed in residential district.** A residence or school district speed limit is twenty-five miles per hour.

The instructions were a correct statement of controlling law. *See State v. Sutton*, 636 N.W.2d 107, 111 (Iowa 2001).

We conclude the defendant's convictions for reckless driving and causing serious injury by reckless driving are supported by substantial evidence. In reaching that conclusion, we acknowledge the defendant's countervailing evidence, including, for example, Jordan's testimony the defendant applied the brakes but the car would not stop and the expert witness called to testify on Lopez-Aguilar's behalf. When assessing the sufficiency of the evidence, however, we consider the evidence "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Standford*, 814 N.W.2d at 615. A challenge to the sufficiency of the evidence does not allow a reviewing court to "resolve conflicts in the evidence, pass upon the credibility of witnesses, or weigh the evidence." *State v. Hutchison*, 721 N.W.2d 776, 780 (Iowa 2006). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence and credit other

evidence." *State v. Anderson*, 517 N.W.2d 208, 211 (Iowa 1994), *overruled on other grounds by State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006).

Here, the jury was free to credit the State's evidence. The State's evidence showed the defendant was driving on a street unfamiliar to him. The street ran through a "very hilly" residential neighborhood. The afternoon sun was shining into the defendant's eyes as he drove westbound. All of these facts urged the use of caution and restraint. Indeed, Jordan, Lopez-Aguilar's passenger, requested Lopez-Aguilar slow down. Instead, Lopez-Aguilar ignored his passenger's request and the conditions presented and travelled at a rate of speed almost twice the speed limit as accurately recorded in the air bag control module. In so doing, Lopez-Aguilar failed to stop at a controlled intersection. Officer Olsen testified the stop sign was "pretty easy to see, fairly wide open." An eyewitness testified Lopez-Aguilar's vehicle was not slowing down and she saw and heard nothing to indicate Lopez-Aguilar was braking. One of the State's expert witnesses testified the brakes of the defendant's car were in working order. Officer Hedlund reenacted the scene and concluded the defendant's conduct was unsafe and dangerous. All of these facts, when considered together, support a finding the defendant drove a vehicle in a reckless manner.

We next address the defendant's conviction for involuntary manslaughter. This offense requires a different showing of recklessness. With respect to the defendant's conviction for involuntary manslaughter, the State was not required to prove the defendant drove recklessly. Instead, the State was required to prove the defendant "recklessly committed a public offense." The distinction between the two uses of recklessness in this case is subtle. One could certainly imagine a

situation in which there was proof that a defendant drove recklessly while not necessarily recklessly committing a public offense and vice versa. In the mine run of cases, however, it is more likely than not that the proof necessary to establish each of the elements would be overlapping, even perhaps entirely overlapping.

With this distinction in mind, we conclude the defendant's conviction for involuntary manslaughter is supported by substantial evidence. Here, the State was required to show the defendant "recklessly committed a public offense." The evidence showed the defendant committed three public offenses. First, he failed to drive at a "prudent speed" given the conditions then existing. Second, the defendant failed to obey a traffic control device. Third, the defendant exceeded the speed limit in a residential area. The evidence also shows the violations were "reckless." Recklessness requires proof of actual or constructive knowledge of a risk and disregard for the same. Here, the defendant was aware of his excessive speed, as his passenger asked him to slow down immediately prior to the accident. Lopez-Aguilar did not heed the request. Instead, he continued to drive almost twice as fast as the speed limit. He did so even though he was unfamiliar with the road and was driving into the sun in a hilly area. These facts demonstrate a willful disregard of the consequences of his conduct.

The facts and circumstances of this case are remarkably similar to *State v. McLaughlin*, 94 N.W.2d 303 (Iowa 1959). In that case, the supreme court sustained a conviction for manslaughter where the defendant was driving at an excessive speed in a residential neighborhood and ran through a stop sign. *See id.* at 306–07. We quote from the case at length:

It is true that we have said unlawful speed alone does not make a case of manslaughter, even though a death results therefrom. But if added to it there is conduct from which it may be inferred that the defendant was utterly careless, and recklessly disregarded the rights of others upon the highway, then a jury issue is engendered and a verdict of manslaughter is permissible. In the case at bar, the defendant was clearly violating the established speed limit of 25 miles per hour. No one denies this. He was upon an unfamiliar and narrow street. He says he did not know of the approaching stop sign at the entrance to Fifth Street. But any driver must realize that such signs are frequent in cities and towns, and that one may be reached at any intersection when he does not know to the contrary.

Yet the defendant drove down Allen Street at a speed which the jury might have found was from 40 to 50 miles per hour, giving no heed to the approaching intersection until he saw the stop sign. This brings up another question. Did he intend to stop, or even to slacken speed for the intersection, if there had been no stop sign? The law requires that intersections of highways, which includes most especially city streets, must be entered carefully and that the right of way must be yielded to vehicles approaching from the right. The record indicates that the defendant had made no preparation for slowing his speed until he saw the stop sign, when he applied his brakes but was unable to stop. Skid marks showed some 73 feet back of the entrance to the intersection. Apparently the only effect of the stop sign was to slow defendant's speed and so make the crash somewhat less destructive and deadly. If Fifth Street had not been guarded by the stop sign there is no indication defendant would have slowed at all. He should have had his car under control as he approached the intersection, regardless of any stop sign; but it is evident he did not.

There is ample evidence that the defendant was violating the fixed speed limit; that he failed to have his car under control and to reduce speed to a reasonable rate when approaching and traversing a crossing of public highways; that he failed to stop at a stop sign; and that he failed to yield the right of way at an intersection to a vehicle coming from his right. While it may be that all these violations would not necessarily and in all cases add up to reckless driving within the meaning of Section 321.283, we think that here the entire record shows a definite jury question as to whether the defendant knew, or should have known, that he was creating an unreasonable risk of injury to others.

Nor does the fact that when he first observed the stop sign he applied his brakes absolve him. One who, by his recklessness has

created a hazard which he should have foreseen and guarded against, is not exonerated from the charge of gross indifference to the safety of others by a futile last minute effort to retrieve the situation and avoid the danger and injury. Such an attempt may have some bearing upon the degree of the indifference, but it is not an absolute cleaning of the slate.

*Id.* (altered for readability).

For the same reasons, we affirm Lopez-Aguilar's convictions for reckless driving, causing serious injury by reckless driving, and manslaughter. *See McLaughlin*, 94 N.W.2d at 306-07; *State v. Mure*, No. 16-1169, 2017 WL 1735886, at *3 (Iowa Ct. App. May 3, 2017) (affirming conviction where defendant drove at excessive speed and failed to stop at a stop sign); *State v. Cornelius*, No. 13-1491, 2014 WL 4230217, at *1 (Iowa Ct. App. Aug. 27, 2014) (affirming conviction where defendant was driving at least twice as fast as the posted speed limit, failed to stop for a traffic control device, and went through an intersection). The same evidence also supports the defendant's convictions for neglect of a dependent person and child endangerment. We thus reject Lopez-Aguilar's challenge to the sufficiency of the evidence supporting his convictions.

IV.

Lopez-Aguilar raises several claims of ineffective assistance of counsel. Because ineffective-assistance claims are based in the Sixth Amendment, our review is de novo. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). To establish a claim of ineffective assistance of counsel, Lopez-Aguilar must prove by a preponderance of the evidence "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.* We consider counsel's performance relative to a reasonably competent practitioner. *See Thorndike*, 860

N.W.2d at 320. Our analysis presumes counsel acted competently. *See id.* "Prejudice exists if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Madsen*, 813 N.W.2d 714, 727 (Iowa 2012) (altered for readability). "A reasonable probability means a substantial, not just conceivable, likelihood of a different result." *Id.* (altered for readability). The failure to prove either element is fatal to the claim. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

A.

In his first claim, Lopez-Aguilar contends his trial counsel provided constitutionally deficient representation in failing to request a limiting instruction regarding the police interview. Specifically, he argues counsel should have requested an instruction that the jury could only consider the officer's statements to put Lopez-Aguilar's responses into context and not for the truth of the matter asserted.

"A limiting instruction is required when evidence is admissible for one purpose but not another." *State v. Bridges*, No. 16-1366, 2017 WL 6034627, at *11 (Iowa Ct. App. Dec. 6, 2017). This court has previously held that a limiting instruction is necessary when viewing recorded interviews. *See State v. Esse*, No. 03-1739, 2005 WL 2367779, at *3 (Iowa Ct. App. Sept. 28, 2005) (concluding an officer's statements and questions during an interrogation video were permissible hearsay placing defendant's statements into context but required a limiting instruction warning the jury not to consider them for the truth of the matter). Even assuming counsel failed to perform an essential duty by failing to request the instruction, Lopez-Aguilar's claim fails under the prejudice prong.

Lopez-Aguilar is unable to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). First, Lopez-Aguilar does not identify any particular statements made that caused him to suffer constitutional prejudice. Second, the substance of Officer Ouimet's statements was duplicative of other properly admitted evidence, which negates any risk of constitutional prejudice. *See State v. Kissel*, No. 16-0887, 2017 WL 6032585, at *4 (Iowa Ct. App. Nov. 22, 2017) (denying relief when district court failed to include a limiting instruction but interviewer did not share any information not available to the jury by other means).

Counsel's failure to request a limiting instruction does not entitle Lopez-Aguilar to relief.

B.

In his second claim of ineffective assistance of counsel, Lopez-Aguilar claims his counsel should have objected to a jury instruction regarding his prior statements. The challenged instruction provides:

> Evidence has been offered to show that the Defendant made statements at an earlier time and place.
> If you find any of the statements were made, then you may consider them as part of the evidence, just as if they had been made at this trial.
> You may also use these statements to help you decide if you believe the Defendant. You may disregard all or any part of the Defendant's testimony if you find the statements were made and were inconsistent with the Defendant's testimony given at trial, but you are not required to do so. Do not disregard the Defendant's testimony if other evidence you believe supports it or you believe it for any other reason.

According to Lopez-Aguilar, this instruction violates his right against self-incrimination and allowed the jury to consider his out-of-court statements as though they were made under oath.

Lopez-Aguilar has failed to prove a breach of an essential duty. This court has repeatedly found the challenged instruction to be a correct statement of the law and repeatedly rejected the same argument. *See, e.g.*, *State v. Hayes*, No. 17-0563, 2018 WL 2722782, at *5 (Iowa Ct. App. June 6, 2018); *State v. Vandekieft*, No. 17-0876, 2018 WL 2727720, at *7–9 (Iowa Ct. App. June 6, 2018); *State v. Payne*, No. 16-1672, 2018 WL 1182624, at *8–10 (Iowa Ct. App. Mar. 7, 2018); *State v. Wynn*, No. 16-2150, 2018 WL 769272, at *2–3 (Iowa Ct. App. Feb. 7, 2018); *State v. Wineinger*, No. 16-1471, 2017 WL 6027727, at *3 (Iowa Ct. App. Nov. 22, 2017); *State v. Tucker*, No. 13-1790, 2015 WL 405970, at *3 (Iowa Ct. App. Jan. 28, 2015). "Counsel has no duty to raise an issue that has no merit." *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010).

## C.

Finally, Lopez-Aguilar claims his trial counsel should have challenged an alleged inconsistency in the verdicts. Specifically, he contends the verdicts are inconsistent because the jury acquitted him of homicide by reckless driving but found him guilty of involuntary manslaughter.

The State contends the record is not adequate for our review because trial counsel may have had strategic reasons for not calling attention to the allegedly inconsistent verdicts. Generally, ineffective assistance claims may not be sufficiently developed on direct appeal to properly address. *Straw*, 709 N.W.2d at 133. We "may choose to preserve the claim for postconviction proceedings." *Id.*

Postconviction proceedings are beneficial because they "allow for full development of the facts surrounding counsel's conduct." *State v. Atley*, 564 N.W.2d 817, 833 (Iowa 1997) (altered for readability). "Because improvident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel, postconviction proceedings are often necessary to discern the difference between improvident trial strategy and ineffective assistance." *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) (altered for readability).

We think there is a strong argument that the verdicts can be reconciled. Nonetheless, rather than deciding the claim on appeal, we give the defendant the opportunity to further develop the record on this claim in postconviction-relief proceedings should he elect to pursue such a claim.

IV.

For the foregoing reasons we affirm Lopez-Aguilar's convictions. We preserve his challenge to the consistency of the verdicts for possible postconviction-relief proceedings.

**AFFIRMED.**